**BURSOR & FISHER, P.A**.
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          klynn@bursor.com
          jwilner@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT GAW, MICHAEL SELBY, LOGAN MITCHELL, and JANE DOE individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>PUBMATIC, INC.,<br><br>                              Defendant. | Case No. 3:25-cv-03164-SI<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:   January 23, 2026<br>Time:   10:00 a.m.<br>Ctrm:   11<br>Judge: Hon. Susan Illston |

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     PLAINTIFFS HAVE ARTICLE III STANDING ................................................2

     A.    Defendant's Creation And Sale Of Profiles Constitutes A Concrete Injury Sufficient For Article III Standing..................................................2

     B.    The Information Collected Is Not Anonymous ..................................................4

II.    PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION ........................5

     A.    Plaintiffs Have A Reasonable Expectation Of Privacy In Preventing The Compilation And Dissemination Of Non-Anonymous Profiles, And Defendant's Conduct Was Highly Offensive ......................................................5

     B.    Defendant Has Not Met Its Burden To Show Doe Consented To Its Conduct On Mindbloom's Website..................................................9

III.   PLAINTIFFS ALLEGE VIOLATIONS OF CIPA § 631 AND THE ECPA .....................11

     A.    Defendant Intercepted The Contents Of Plaintiffs' Communications In Transit..................................................11

     B.    Defendant Aided The Partner Tracker's Wiretapping Under Clause Four Of CIPA § 631(a)..................................................13

     C.    The Crime-Tort Exception Applies To The ECPA Claim ....................................14

IV.   PLAINITFFS ALLEGE A VIOLATION OF CIPA § 638.51 ...........................................15

     A.    A "Pen Register" Includes Internet Tracking Software, As Federal Courts Have Universally Found ..................................................16

     B.    Defendant's Tracker Records "Routing, Addressing, Or Signaling Information" Transmitted By Plaintiffs' Computers..................................................18

     C.    There Is No Conflict With The CCPA, And The CIPA Applies Regardless Under The CCPA's Plain Text ..................................................20

V.    PLAINTIFFS ALLEGE DEFENDANT WAS UNJUSTLY ENRICHED ........................21

CONCLUSION ..................................................................................................................21

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Adstra, LLC v. Kinesso, LLC,*
2025 WL 552050 (S.D.N.Y. Feb. 19, 2025) ................................................................................ 5

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ................................................................................................... 21

*Aviles v. Liveramp, Inc.,*
2025 WL 487196 (Super. Ct. Los Angeles Cnty. Jan. 28, 2025) ............................................. 19

*Berman v. Freedom Financial Network, LLC,*
30 F.4th 849 (9th Cir. 2022) .................................................................................................... 10

*Brown v. Google LLC,*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .................................................................................... 14

*Brown v. Google LLC,*
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................................... 6, 9, 12, 13

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024) ................................................................................................. 10

*Chabolla v. ClassPass Inc.,*
129 F.4th 1147 (9th Cir. 2025) ................................................................................................. 10

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
603 U.S. 799 (2024) ................................................................................................................. 17

*Cousin v. Sharp Healthcare,*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .................................................................................... 13

*Cruz v. Tapestry, Inc.,*
113 Cal. App. 5th 943 (2d Dist. 2025) ..................................................................................... 10

*Deivaprakash v. Condé Nast Digital,*
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) ....................................................................... 2, 3

*Deivaprakash v. Condé Nast Digital,*
2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) ............................................................... 1, 8, 15, 18

*Dellasala v. Samba TV, Inc.,*
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ........................................................................... 3

*Doe v. Call-On Doc, Inc.,*
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........................................................................... 11

*Doe v. Meta Platforms*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)............................................................................ 14

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814  (E.D. Cal. 2025) ............................................................................. 15

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)..................................................................................................... 19

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ............................................................................................ 9

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ................................................................................... 3, 8

*Fregosa v. Mashable, Inc*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........................................................... passim

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........................................................ 2, 6, 20

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025).................................................... 16, 18, 19

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)......................................................................................... 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)............................................................................ 9

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ..................................................................... 7

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025).................................................................. 3

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)............................................................................... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)................................................................................... 4, 6, 7

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)................................................................................. 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)............................................................................. 9

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023)............................................................................................ 9

*Jackson v. Fandom, Inc.*,
  2023 WL 4670285 (N.D. Cal. July 20, 2023) ................................................................................ 5

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ................................................................................ 4, 11

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................................. 1, 2, 9

*Katz-Lacabe v. Oracle Am., Inc.*,
  2023 WL 6466195 (N.D. Cal. Oct. 3, 2023) ................................................................................ 21

*Khamooshi v. Politico LLC*,
  2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ................................................................................ 4

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................................................ 14

*Lesh v. Cable News Network, Inc.*,
  767 F. Supp. 3d 33 (S.D.N.Y. 2025) ............................................................................. 16, 17

*Lightoller v. JetBlue Airways Corp.*,
  2023 WL 3963823 (S.D. Cal. June 12, 2023) ................................................................................ 4

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................................ 9

*Marden v. LMND Med. Grp., Inc.*,
  2024 WL 4448684 (N.D. Cal. July 3, 2024) ................................................................................ 14

*McClung v. AddShopper, Inc.*,
  2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ................................................................................ 2

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ................................................................................ 11

*Mikulsky v. Noom, Inc.*,
  2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ................................................................................ 4

*Mirmalek v. Los Angeles Times Communications LLC*,
  2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ............................................................. 16, 18, 20, 21

*Moody v. C2 Educational Systems Inc.*,
  742 F. Supp. 3d 1072 (C.D. Cal. 2024) ............................................................................. 16, 17

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................................ 9

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ................................................................................ 3

*R.C. v. Sussex Publishers, LLC*,
  2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......................................................................... 4, 8

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024) ........................................................................................ 12

*R.S. v. Prime Healthcare Servs., Inc.*,
  2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .............................................................................. 15

*Ramirez v. Trusper Inc.*,
  2025 WL 2955231 (9th Cir. Oct. 20, 2025) ................................................................................. 9

*Riganian v. LiveRamp Holdings, Inc.*,
  2025 WL 2021802 (N.D. Cal. July 18, 2025) ..................................................................... passim

*Rodriguez v. Autotrader.com, Inc.*,
  762 F. Supp. 3d 921 (C.D. Cal. 2025) ................................................................................. 19, 20

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) ............................................................................................... 21

*Rose v. Variety Media, LLC*,
  2025 WL 2794920 (Super. Ct. Los Angeles Cnty. Sept. 24, 2025) ................................. 16, 19, 20

*Rushing v. Williams-Sonoma, Inc.*,
  2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) ........................................................................... 10

*Saeedy v. Microsoft Corp.*,
  2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ......................................................................... 4

*Sanchez v. Cars.com*,
  2025 WL 487194 (Super. Ct. Los Angeles Cnty. Jan. 27, 2025) ................................................ 18

*Scarlett v. Future US, LLC*,
  2025 WL 2614587 (Super. Ct. San Francisco Cnty. Sept. 5, 2025) ...................................... 17, 18

*Selby, v. Sovrn Holdings, Inc.*,
  2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ..................................................................... passim

*Shah v. Cap. One Fin. Corp.*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..................................................................................... 14

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) ................................................................... 16, 17, 18, 19

*Smith v. LoanMe, Inc.*,
  11 Cal. 5th 183 (2021) ............................................................................................................... 18

*Snow v. Eventbrite, Inc.*,
  2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) ........................................................................... 10

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ................................................................................ 13

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................................................................................ 15

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .................................................................................................... 14

*Tate v. Vitas Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........................................................................................ 13

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................................................ 6

*U.S. Dept. of Justice v. Reporters Committee for Freedom of Press*,
489 U.S. 749 (1989) ...................................................................................................................... 3

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........................................................... 16, 17, 20, 21

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) ................................ 8, 16, 20, 21

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........................................................................................ 11

**STATUTES**

18 U.S.C. § 2710 ............................................................................................................................. 7

Cal. Civ. Code § 1798.100(a) ........................................................................................................ 20

Cal. Civ. Code. § 1798.175 ........................................................................................................... 21

Cal. Pen. Code § 638.50 ........................................................................................................ passim

Cal. Pen. Code § 638.52 ............................................................................................................... 17

Plaintiffs Gilbert Gaw, Michael Selby and Logan Mitchell, and Jane Doe ("Plaintiffs") respectfully submit this Opposition to Defendant PubMatic Inc.'s ("Defendant" or "PubMatic") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 35) (the "Motion" or "MTD").

**INTRODUCTION**

This case involves egregious privacy violations perpetuated on an enormous scale across the internet by Defendant. Plaintiffs' First Amended Complaint (ECF No. 34) (the "Complaint" or "FAC") alleges that by contracting with hundreds of website operators, data brokers, and technology companies, Defendant improperly collects massive amounts of data on millions of internet users, including their identifying information, addressing information, and the contents of their private communications with websites, all without website users' knowledge or consent. FAC ¶¶ 1, 55-60, 71, 114, 144-198. Defendant does this to profit off consumers' data, compiling the information it collects into detailed profiles on consumers and their online behavior, which are sold to dozens of entities to facilitate real-time bidding. *Id.* ¶¶ 2, 55, 121, 152, 174, 185, 197, 199-203. The result is dragnet surveillance of near every aspect of Plaintiffs' and Class Members' lives and a loss of control of even one's most intimate information, which is made available for sale to numerous data brokers and advertisers in the blink of an eye without notice or consent. *Id.* ¶¶ 47, 60, 125-126, 199-203.

Numerous courts have sustained claims like Plaintiffs' that allege data brokers like Defendant conducted such widespread surveillance, profiling, and data selling. *See*, *e.g.*, *Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, --- F. Supp. 3d ---, 2025 WL 2021802 (N.D. Cal. July 18, 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 929 (N.D. Cal. 2023). Indeed, two courts in this District have found Defendant's Tracker[1] is an illegally installed "pen register" within the meaning of the CIPA. *Deivaprakash v. Condé Nast Digital*, --- F. Supp. 3d ---, 2025 WL 2541952, at *3 (N.D. Cal. Sept. 4, 2025); *Fregosa v. Mashable, Inc*, 2025 WL 2886399, at *1, *6 (N.D. Cal. Oct. 9, 2025). This Court should not reach a different result.

For the following reasons, Defendant's Motion should be denied.

---

[1] All terms not defined herein shall have the same meaning as in the FAC.

## ARGUMENT

### I.    PLAINTIFFS HAVE ARTICLE III STANDING

#### A.    Defendant's Creation And Sale Of Profiles Constitutes A Concrete Injury Sufficient For Article III Standing

Ignoring the crux of Plaintiffs' allegations, Defendant contends that "mere surveillance of web browsing, without more, does not establish an injury in fact."  MTD at 7:12.  Plaintiffs allege the "more" in spades.  Plaintiffs allege that Defendant is a data broker that "compiled detailed profiles by tracking [Plaintiffs'] interactions across many websites, including websites where they disclosed sensitive data" and selling that information to any and all interested advertisers.  *Selby*, 2025 WL 2950164, at *3 n.3; *see also*, *e.g.*, FAC ¶¶ 46-47, 75-78, 199-203, 213-218, 227-234, 243-249, 259-266.

This more than suffices for Article III standing.  *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) (finding allegations satisfy "the requirements of *Popa*" where the plaintiff alleged "internet trackers allowed third parties to generate profiles reflecting his personal information"); *Riganian*, 2025 WL 2021802, at *6 ("[T]he tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy."); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Katz-Lacabe*, 668 F. Supp. 3d at 940 (finding Article III standing based on "Oracle's ability to amass vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers") (cleaned up); *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) ("Misappropriating a person's browsing activity across a network of thousands of online retailers and using it to barrage that person's devices with unwanted email communications … is the type of intrusion on privacy and seclusion that can be vindicated in the federal courts.").

As a result of Defendant's conduct, Plaintiffs and others lost their right to "control [] information concerning his or her person," which is encompassed within "both the common law and

the literal understandings of privacy." *U.S. Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989). This is at least analogous to the tort of intrusion upon seclusion, although an exact match is not required by Ninth Circuit jurisprudence. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up); *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30, 2025) ("[T]he Court concludes the better reading of *TransUnion* is that harms need only be similar in kind to those redressed by common law torts. That is because *TransUnion* expressly rejected the notion that an 'exact duplicate' is required….").

None of the aforementioned arguments are affected by *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), which did not disturb pre-existing Article III standing jurisprudence. *See Dellasala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law…"). Moreover, "[t]he scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in" *Popa*. *Selby*, 2025 WL 2950164, at *3 n.3. *Popa* involved "the tracking of plaintiff's non-sensitive interactions with a single website." *Id*. And all the information in *Popa* was anonymous because the website had configured the third party software to exclude the user's "street number and zip code." *Popa*, 153 F.4th at 787, 787 n.1. In addition, the only thing the third party did with the information in *Popa* was tell websites "which elements of a website have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website." *Id.* at 786 (cleaned up). So, *Popa* boiled down to a third party collecting anonymous information that was used in a manner akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791. Unlike here, there was no linkage of information to non-anonymous profiles maintained by data brokers, no sale of that information to advertisers, and no loss of control of personal information because personal information was not captured in *Popa*.

Further, "*Popa* confirmed that *Facebook* remains good law," and thus, allegations showing the "compilation of personally identifiable browsing history demonstrate[] individual circumstances giving rise to … injuries that satisfy[y] Article III's standing requirements." *Deivaprakash*, 2025

WL 2779193, at *1 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); otherwise cleaned up).

Defendant's remaining authorities concerned substantially more limited tracking on a single website, or anonymous tracking unlike here. *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (alleging collection of information like "geolocation data, device type, browser type, and 'device fingerprints,'" but again without linkage to comprehensive profiles that were sold to advertisers); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 951 (N.D. Cal. 2023) (distinguishing *Lightoller v. JetBlue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023), as involving anonymous information); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5 (W.D. Wash. Dec. 21, 2023) (distinguishing allegations from those like here involving the "unauthorized correlation of the collected data with the user's personal profiles that it then sold to advertisers to generate revenue"); *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *5 (S.D. Cal. Jan. 22, 2024) ("[T]he FAC does not allege that Plaintiff provided any personally identifiable information that would allow Noom to link the 'sensitive health information' she purportedly provided via the Noom Survey to Plaintiff.")

### B.    The Information Collected Is Not Anonymous

Defendant attempts to save its standing argument by claiming "the data PubMatic collects is anonymous." MTD at 8:7-8. To the extent Plaintiffs' standing depends on whether the information collected is personally identifiable, then "[r]esolution of the standing issue is intertwined with an element of the merits of plaintiff[s'] claim" and is thus a question of fact inappropriate for resolution at this juncture. *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *4 (N.D. Cal. Mar. 28, 2025) (cleaned up).

Regardless, Defendant is wrong. As Plaintiffs allege, Defendant is a data broker that maintains an "Identity Hub" that "allows PubMatic's clients to standardize, if not deanonymize, user information in order to: (1) create a more thorough profile of users' identity across multiple platforms; and (2) further understand users' habits and behavior in order to serve targeted advertisements." FAC ¶¶ 50, 116. Indeed, Defendant syncs with "over 75 identity and data providers," which include data brokers, for further identity resolution. *See*, *e.g.*, *id.* ¶¶ 118, 224, 240,

255. The allegations show that Defendant's capability to link various identifiers to non-anonymous profiles is not hypothetical either. Instead, the data Plaintiffs received from Defendant shows they were linked to profiles that contained, among other things, Plaintiffs' age, income levels, vehicles owned, spoken languages, and even what types of food and shows they like. FAC ¶¶ 225, 256; *see also id.* ¶¶ 22-25. This is not some far-fetched theory, as courts have long understood the ability of software companies like Defendant to "identif[y] consumers, addresses, or households across multiple media by linking together separate datasets relating to individual customers." *Adstra, LLC v. Kinesso, LLC*, 2025 WL 552050, at *2 (S.D.N.Y. Feb. 19, 2025).

It is obvious that Defendant would contend their software cannot identify consumers. Indeed, many ad-tech providers traffic in that fallacy. But the way the software actually works is a matter for discovery, not the pleadings. *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) ("To the extent Fandom challenges Jackson's factual allegations regarding the purpose of Fandom's data-sharing practices, that factual issue is not appropriate for resolution on a motion to dismiss."). As such, Defendant's contention that it does not identify users does not warrant dismissal. *Riganian*, 2025 WL 2021802, at *7 ("[T]he Court does not find LiveRamp's pseudonymization argument persuasive, as Plaintiffs allege that the Attribute Enrichment feature allows any of LiveRamp's customers to seek any segment information associated with an individual by providing the individual's name, physical address, or email address—effectively rendering any anonymity functionally meaningless.").

## II.    PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION

### A.    Plaintiffs Have A Reasonable Expectation Of Privacy In Preventing The Compilation And Dissemination Of Non-Anonymous Profiles, And Defendant's Conduct Was Highly Offensive

Defendant contends that "Plaintiffs have no reasonable expectation of privacy on the internet, and the anonymized information allegedly collected is not sensitive, thus defeating Plaintiffs' intrusion upon seclusion claim." MTD at 11:3-5. That is wrong. *Selby* and *Riganian* are instructive. Like here, both cases involved a third party "engage[d] in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email address and other personal

identifiers." *Selby*, 2025 WL 2950164, at *3 (cleaned up). Both courts held such conduct constitutes "a 'highly offensive' privacy intrusion" that suffices for "the tort of intrusion upon seclusion." *Id.*; *Riganian*, 2025 WL 2021802, at *7 ("[T]he Court cannot at this stage conclude as a matter of law that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly offensive.").

Likewise, in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020), the Ninth Circuit held that users "have adequately alleged a reasonable expectation of privacy" where, like here, "Facebook acquire[d] an 'enormous amount of individualized data' through its use of cookies on the countless websites that incorporate Facebook plug-ins" that "can be easily collected without user knowledge." This is precisely what Plaintiffs allege here—that Defendant unlawfully tracks, collects, and deanonymizes Plaintiffs' web browsing activity and identification such that Defendant is able to create "comprehensive user profiles" by matching individuals' identities with the data collected about them. FAC ¶ 46; *see also id.* ¶¶ 199-203, 213-218, 227-234, 243-249, 259-266; *id.* ¶ 153 (Defendant tracks "the future web activity" of individuals and adds it to profiles).

Against these directly on-point (and controlling) authorities, Defendant contends "there is no reasonable expectation of privacy when browsing the web." MTD at 12:19. As an initial matter, "[g]iven the factually intensive nature of the inquiry, courts are generally hesitant to decide" whether a reasonable expectation of privacy exists. *Motorola Mobility*, 2025 WL 1939957, at *10. Regardless, Defendant's quip misrepresents Plaintiffs' allegations and defies Ninth Circuit precedent. *In re Facebook*, 956 F.3d at 603; *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023) ("Google's narrower argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination."). Indeed, Defendant's own authority notes there is no *per se* rule that "there can never be a reasonable expectation of privacy over internet activity." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024). And the allegations here are about Plaintiffs' "control of personal information regarding [their] digital activity and profile," which Plaintiffs have an expectation of privacy over and had the right to control the dissemination of (or prevent the compilation of in the first place). *Motorola Mobility*, 2025 WL 1939957, at *6. Defendant's other

authority, *Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024), is inapposite, as it involved collection by the website operator rather than a third party.  *See Hubbard*, 2024 WL 3302066, at \*1-2 (N.D. Cal. July 1, 2024) (plaintiffs accessed YouTube, and "Google operates YouTube" and "collects" "information about YouTube's users").

Defendant also contends "Plaintiffs attempt to manufacture an expectation of privacy for activities on the internet, even though no expectation of privacy exists for the exact same activities off the internet."  MTD at 12:25-26.  For instance, Defendant contends "Plaintiffs cannot reasonably expect privacy in activities like attending an open house (like searching for a home on Zillow), going to the movie theater (like watching a movie on Peacock),[2] or buying a cookbook (like visiting Bon Appetit)."  *Id.* at 13:1-3.  But in each of these hypotheticals, unlike here, there is no secret individual following Plaintiffs around, compiling a profile of their activities, and selling that information to advertisers.  Moreover, while Plaintiffs include exemplar websites in the FAC showing how Defendant collects information, these websites do not represent the extent of Defendant's data collection.  On the contrary, the data Plaintiffs received from Defendant shows Defendant ascertained information including Plaintiffs' "yearly household income," "credit risk," "affluence level," "language spoken in the home," "level of investable assets," and "genres of television viewed."  *See*, *e.g.*, FAC ¶¶ 225, 256.  The data also showed Defendant matched Plaintiffs' information to data brokers like Experian and TransUnion that provided additional information.  *Id.* ¶¶ 224, 240-241, 255.  This exceeds the sort of behavior Defendant attempts to equate its conduct to.  *In re Facebook*, 956 F.3d at 604 ("[T]he allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent us from concluding that the Plaintiffs have no reasonable expectation of privacy.").

Defendant further argues "there is no reasonable expectation of privacy in "'browser and device information,' account IDs, or IP addresses, or even URLs."  MTD at 13:19-20.[3]  But "it does

---

[2] Of course, watching a movie on a streaming service like Peacock is protected under the VPPA, 18 U.S.C. § 2710.

[3] Defendant argues "the only website [Plaintiffs] allege [Defendant] collects IP addresses from is Buzzfeed – which no Plaintiff alleges they visited."  MTD at 13:25-26.  On the contrary, Plaintiffs allege the PubMatic Tracker "automatically collects Browser and Device Information, such as the IP address you use to connect to an online service."  FAC ¶ 80 (cleaned up).

not matter whether [Plaintiffs] had a reasonable expectation of privacy in the information collected because the privacy violation … it encompasses how th[e] collection allegedly allowed [Defendant] to: (1) build a profile reflecting [Plaintiffs'] personal information; and (2) interfere with [Plaintiffs'] ability to remain anonymous." *Deivaprakash*, 2025 WL 2541952, at *4; *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) ("whether Plaintiff has a reasonable expectation of privacy to the collected information does not preclude him from alleging an invasion of privacy injury" because "Plaintiff alleges that the collected information was used to build a profile for users based on their information, interests, and interferences"); *Riganian*, 2025 WL 2021802, at *6 ("[T]he tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy.").

Relatedly, Defendant argues "Plaintiffs have no reasonable expectation of privacy in anonymized data about their website-viewing habits." MTD at 14:2-3. As set forth above, the information Defendant collected here is anything but anonymous. Argument § I.B, *supra*. And "[o]ur case law underscores the principle that the privacy injury occurs at the point of interception without consent, irrespective of whether the misappropriated data is anonymized." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025). That being said, if Plaintiffs' expectation of privacy depends on whether the collected information is identifiable, that is a question of fact not suitable for resolution at this juncture. *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *3-4 (N.D. Cal. Mar. 28, 2025).

Last, Defendant argues Plaintiffs claim "still fails because they have not adequately pled any highly offensive invasion of privacy." MTD at 15:10-11. Specifically, Defendant argues "data collection and disclosure to third parties on the internet is routine commercial behavior and is not a highly offensive intrusion of privacy." *Id.* at 15:16-18 (cleaned up). "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). In any event, Defendant's argument minimizes its conduct related to comprehensive profiling and data selling, which is "highly offensive" and "go well beyond the

routine commercial behavior of collecting contact information for sending advertisements." *Selby*, 2025 WL 2950164, at *3; *Riganian*, 2025 WL 2021802, at *7 (cleaned up); *see also id.* ("[T]he Court cannot at this stage conclude … that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly offensive."); *Katz-Lacabe*, 668 F. Supp. 3d at 942 (finding allegations "of data collection would go well beyond the 'routine commercial behavior'").[4]

**B.    Defendant Has Not Met Its Burden To Show Doe Consented To Its Conduct On Mindbloom's Website**

As to Doe specifically, Defendant contends she "expressly consented to the complained-of collection and disclosure practices on Mindbloom's website," obviating her intrusion upon seclusion claim. MTD at 14:11-12. Defendant has not met its burden to show Doe was on notice or assented to its conduct. *Brown*, 685 F. Supp. 3d at 926 n.13 ("The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up).

As an initial matter, Doe alleges she visited the Mindbloom website "[i]n or about November 2024." FAC ¶ 258. But Defendant includes the design and content of Mindbloom's webpage as it appears today. Lashway Decl. Ex. B. Defendant has not and cannot attest (for lack of personal knowledge) to the design and content of the webpage in November 2024, nor can Defendant attest that the design and content of the website one year ago is identical to today. Defendant's failure to submit such evidence by a person with knowledge is dispositive of their notice argument. *See*, *e.g.*, *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) (declining to enforce updated terms where "Amazon did not provide the court with a copy or description of any such notice, however. Nor did Amazon make any showing that Jackson received such notice."); *Ramirez v.*

---

[4] Defendant's cited authorities dealt with allegations of significantly less sensitive data collection, and/or the inability to deanonymize users than what is alleged here. *See*, *e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090-91 (N.D. Cal. 2022) (failing to identify users through collected data); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (addressing "LinkedIn ID and the URL of the LinkedIn profile"). *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), which Defendant also cites, "did not explain how expansion of [*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011)]'s holding, counter to the privacy interests of iDevice users, was consistent with California's community privacy norms." *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078-79 (N.D. Cal. 2016). *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014), "rests entirely *In re Phone Application Litig.*," which "relied on an overreading of *Folgelstrom*," and is thus "unhelpful." *Opperman*, 205 F. Supp. 3d at 1079.

---

*Trusper Inc.*, 2025 WL 2955231, at \*2 (9th Cir. Oct. 20, 2025) (declining to enforce arbitration clause where the defendant "did not provide a screenshot of the table of contents page"); *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at \*6 (N.D. Cal. Oct. 19, 2020) ("Eventbrite would only be able to carry its burden if it could show what the agreements looked like during the period when the plaintiffs would have actually seen them.").

Even if the website was identical in November 2024 as it is today, it would not suffice for notice. The hyperlink to the Privacy Policy is in "considerably smaller than the font used in the surrounding website elements," such as the large promotional text ("We're glad you're taking…"), the large "Start now button," and even the image of the woman's face. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at \*7 (N.D. Cal. Aug. 18, 2025) (hyperlink inconspicuous where "[t]he disclaimer is in small font … is the same color as surrounding text, the terms and conditions are not capitalized, and while underlined, the hyperlink represented by the underlining is not in blue or otherwise color contrasted."); Lashway Decl. Ex. B. The hyperlink is only underlined, which is not sufficient. *Berman*, 30 F.4th at 857 ("A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text."). "The advisal is not … located directly above or below the action button." *Godun v. JustAnswer LLC*, 135 F.4th 699, 712 (9th Cir. 2025). And the "images of people" further distract from notice. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025); *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 918 (2d Dist. 2025) ("[O]ther aspects of the notice text and the action button deemphasize the conspicuousness of the notice text.").

In addition, even if Doe was on notice of and assented to Mindbloom's privacy policy (and she did not), that does not mean the privacy policy itself disclosed Defendant's conduct. As the Ninth Circuit has made clear, "[w]hether a 'reasonable' … consented to a particular data collection practice … must take into account the level of sophistication attributable to the general public." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). With this standard in mind, the portion of the privacy policy Defendant cites states that "third parties may use" information "to determine whether you have visited the Service previously, remembers preferences that you have

set, statistically monitors how many people are using our Service and for what purposes, and allows delivery of advertising targeted to your interests." Lashway Decl. Ex. A § II.B. None of that comes remotely close to disclosing Defendant's sophisticated "aggregation, synthesis, and sale of comprehensive online and offline data of individuals." *Rignanian*, 2025 WL 2021802, at \*7; *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023) ("Regardless of whether the hyperlink to the privacy policy appeared in the particular chat window accessed by Yockey, the policy's language does not encompass the conduct at issue."); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at \*6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."). Indeed, Mindbloom, who is likely not aware of how many or what type of websites on which Defendant's Tracker is operative, cannot adequately apprise someone of the extent to which they will be tracked in the indefinite future by an unknown party.

Last, even if Doe consented to Defendant's conduct on Mindbloom's Website (she did not), that does not mean she was not tracked without consent on other websites, prior to or after visiting Mindbloom. Thus, Doe would still have a claim against Defendant.

## III.    PLAINTIFFS ALLEGE VIOLATIONS OF CIPA § 631 AND THE ECPA

### A.    Defendant Intercepted The Contents Of Plaintiffs' Communications In Transit

Defendant argues that Plaintiffs do not allege an "in transit" interception because "by Plaintiffs' own account, it is after the website loads – i.e., once the individual reached the website – that the PubMatic Tracker loads and begins collecting information." MTD at 18:4-5. But the allegations Defendant quotes describe process by which Defendant's "code gets to a website user's device. [Defendant] ignores the [other] paragraphs … which indicate that, once [the Tracker] is on the device, it *then* begins to intercept communications *when the user makes communications to the website*." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 962 (N.D. Cal. 2023); *see also* FAC ¶¶ 1, 166, 181, 230, 246 (showing Defendant's acquisition of information in real time as the information is entered into a given website); *Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at \*12 (S.D. Cal. June 13, 2025) (finding sufficient allegations of "a simultaneous transmission of [the plaintiff's] information to" third parties and the third parties "intercept[ion of] Plaintiff's PII and PHI in real

time"). Indeed, Defendant "specifically advertises" their ability to allow advertisers "'to target specific audiences in real-time.'" *Id*. ¶ 142 (cleaned up). Plaintiffs then provide multiple examples of this process occurring. *Id*. ¶¶ 163-166, 181, 230, 246, 257. Thus, Plaintiffs "adequately allege[] that the interceptions occurred in transit." *Selby*, 2025 WL 2950164, at *3; *Riganian*, 2025 WL 2021802 at *10 ("Plaintiffs' FAC contains specific factual allegations that, if taken as true, plausibly allege real-time interception and contemporaneous reading within the meaning of § 631(a).").

Defendant also argues that Plaintiffs "do not adequately allege that PubMatic 'intercepted' the contents of their communications." MTD at 18. This is wrong. "Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown*, 685 F. Supp. 3d at 935. This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA."). Here, the FAC contains clear allegations of detailed URLs on the exemplar websites that were captured by Defendant or the Partner Trackers it aided. *See, e.g.*, FAC ¶ 229 (Defendant "intercepted Plaintiff Selby's confidential communications with the Zillow website, including his geographic location and the specific properties that Plaintiff Selby clicked on and viewed.); *id*. ¶ 262 (PubMatic, through a Partner Tracker, "received the URL of each page of the website Plaintiff Doe visited"); FAC ¶¶ 66-69, 148, 166, 181, 190. Defendant intercepted Plaintiffs' communications through its Partner Pixels and its own PubMatic Tracker.

Moreover, the websites in the FAC are a small sample of the hundreds or thousands of websites where Defendant operates and intercepts or aids in the interception of URLs with content information. *Id*. ¶ 125. In other words, Plaintiffs allege that the Partner Trackers collect detailed URLs (which are content), and shares that with Defendants who use it to create comprehensive profiles. Because "Plaintiffs have alleged that, among other things, [Defendant] collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed," that information suffices for content. *Selby*, 2025 WL 2950164, at *3;

*Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" are content).

### B. Defendant Aided The Partner Tracker's Wiretapping Under Clause Four Of CIPA § 631(a)

Defendant argues Plaintiffs cannot state an "aiding"[5] claim against Defendant under the CIPA because Plaintiffs "do not allege how those Partner Trackers themselves violate CIPA by intercepting communications in transit," and "do not allege how PubMatic's identity resolution services, even if they operate as alleged, in any way aid the Partners Pixels' interception of communications 'in transit.'" MTD at 21:1-10. As to the former, the Partner Trackers intercepted the contents of Plaintiffs' communications in transit for the reasons stated above. *See* Argument § III.A, *supra*. Moreover, because Defendant's tracker is on hundreds or thousands of websites, Plaintiffs cannot make all specific website allegations. However, Plaintiffs' counsel has tested numerous websites where Defendant's Tracker is present. If the Court would like examples from Plaintiffs' testing, Plaintiffs respectfully request leave to amend to add those examples.

As to the latter, CIPA § 631(a)[iv] creates liability for any person who "aided, agreed with, employed, or conspired with any person or persons to unlawfully do, or permit, or cause to be done" the wiretapping in the previous clauses of § 631(a). Defendant's identity resolution fits into this broad framework. In simple terms, wiretapped information is exponentially more valuable if the wiretapper can identify who is communicating and obtain additional information about that person. This is exactly what occurs here. Defendant provides assistance with the wiretapping by identifying the person behind the information collected by the Partner Trackers and associating other information from the profiles Defendant maintains. *See, e.g.,* FAC ¶ 120 ("The Partner Tracker "calls" the PubMatic Tracker and the PubMatic responds with a request that shares the individual's PubMatic

---

[5] Defendant categorizes this as an "aiding-and-abetting" claim. MTD at 20:3. But the "plain text of section 631(a) is unambiguous on this issue … [i]t does not require that a party aid *and* abet," and "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Tate v. Vitas Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) (emphasis in original); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *7-8 (N.D. Cal. Oct. 1, 2024) ("The statute as worded does not include an intent standard … The Court finds the approach in *Cousin* more persuasive because it more closely follows the language of the statute.")

ID and associated information, including the identifiers described above, with that Partner Tracker."), *id*. ¶ 122 (detailing how PubMatic and its Partner Trackers sharing information supports the "real-time bidding process."), *id*. ¶¶ 190-194 (description of this process on the MindBloom website). Even more information is shared when the wiretapping occurred during a real-time bidding auction. FAC ¶ 142 ("PubMatic specifically advertises how the PMP allows advertisers the 'ability to target specific audiences in real-time.'"). There is no doubt this conduct fits within the plain language of the statute.

### C.    The Crime-Tort Exception Applies To The ECPA Claim

Defendant argues the "crime-tort" exception to the ECPA does not apply, and thus, Plaintiffs' ECPA claim fails based on the various websites' conduct to Defendant's conduct. *See* MTD at 22:22-24 ("Courts repeatedly reject the application of the crime-tort exception where a defendant's alleged interception of communications is to facilitate routine commercial behavior; an intent to profit alone is not enough."). Not so. Courts have found tortious intent sufficiently pled where plaintiffs "have alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles," that this "association of their data with preexisting user profiles violated state law" (*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (Koh, J.)), and that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) ("Here, Plaintiffs do allege in the complaint that Defendant intercepted Plaintiffs' electronic communications. However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *Doe v. Meta Platforms*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (holding that the "one-party consent exemption" does not apply when the party acts for the purpose of committing a tort).

Defendant, relying on *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) and *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999), contends that the

crime-tort exception cannot apply if its was primarily financially motivated. MTD at 22:13-19. Judge Tigar rejected this argument in *Riganian*:

> [T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable.
>
> …
>
> The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.

*Riganian*, 2025 WL 2021802 at *9-10 (denying to "adopt any bright-line rule insulating financial motives from the crime-tort exception") (cleaned up). Other courts agree. *See*, *e.g.*, *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (applying similar reasoning as *Riganian*); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 , 850 (E.D. Cal. 2025) (finding "financial[] motivat[ions] do not immunize [defendants] from liability under the ECPA."); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("[T]he existence of a financial motivation is not a get-out-of-liability-free card."). Accordingly, Defendant's financial interest in improving its marketing with "an intent to profit" is not sufficient to excuse it's conduct in violating CIPA § 631 and the California Constitution and common law as alleged.

Here, as in *Riganian*, Plaintiffs allege Defendant intercepted their communications with an unknown number of websites for the purpose of "combin[ing] the data from every website a person visits with other data collected by its partner advertisers … In this way, PubMatic amasses and aggregates Internet users' data and sells it back to its' partner advertisers." FAC ¶ 201-203; *see also id*. ¶¶ 1, 2, 25, 45-46, 57, 69-70, 78, 116, 138, 152-53, 159-60,169, 174-75, 185-86, 197. This is more than enough to deny Defendant's Motion.

## IV.     PLAINITFFS ALLEGE A VIOLATION OF CIPA § 638.51

Two courts in this District have already found that Defendant's Tracker is a "pen register" as defined by Cal. Pen. Code § 638.50(b). *Deivaprakash*, 2025 WL 2541952, at *3; *Fregosa*, 2025 WL 2886399, at *1, *6. And within this District, "Judges Lin, Orrick, Pitts, Ryu, Tigar, and [Breyer and Van Keulen]" have found Trackers similar to Defendant's are "pen registers" "at the pleading stage."

---

*Fregosa*, 2025 WL 2886399, at *2; *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *18 (N.D. Cal. Oct. 16, 2025). Defendant provides no good reason to reach a different result here.

### A. A "Pen Register" Includes Internet Tracking Software, As Federal Courts Have Universally Found

Defendant argues that a "pen register" can only apply to "telephones, not web-tracking technologies." MTD at 23:20. "This argument finds no support in the legislative text, legislative purpose, or the growing body of decisions from this District." *Fregosa*, 2025 WL 2886399, at *4. Cal. Pen. Code § 638.50(b) defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." "Nothing in th[at] statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). To the contrary, the "California Legislature[] chose[]" "expansive language" for the "definition of pen register" that "the Court cannot ignore," language that is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool (i.e. 'device or process')." *Id.* at 928-29 (cleaned up).

Thus, *every federal court* to evaluate the question, and a number of recent Superior Court decisions, have found that internet tracking software similar to Defendant's (if not Defendant's Trackers themselves) are "pen registers" within the meaning of the CIPA. *See, e.g.*, *Riganian*, 2025 WL 2021802, at *11 ("[F]ederal courts have interpreted the plain language of Section 638.50 expansively to find that 'pen registers' includes data collection tools beyond those th[at] record information from telephones."); *Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (rejecting argument that a pen register must be "telephone technology") (cleaned up); *Walsh*, 2025 WL 2939229, at *18 (same); *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *4 (N.D. Cal. Sept. 2, 2025) (same); *Moody v. C2 Educational Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (same); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) (same); *Selby*, 2025 WL 2950164, at *4 (same); *Rose v. Variety Media, LLC*, 2025 WL 2794920, at *3 (Super. Ct. Los Angeles Cnty. Sept. 24, 2025) (same); *Xu v. Reuters*

*News & Media, Inc.*, 2025 WL 3035016, at *3 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) (same); *Scarlett v. Future US, LLC*, 2025 WL 2614587, at *4 (Super. Ct. San Francisco Cnty. Sept. 5, 2025), at *4 (finding "The Trackers are pen registers because they are devices or processes that captured the routing, addressing, or signaling information—the IP address, Device Metadata, and unique user IDs—from the electronic communications transmitted by Plaintiff's and the Class's computers or smartphones.") (cleaned up).

Defendant's citation to a different provision of the CIPA—Cal. Pen. Code § 638.52—does not affect this analysis. As every federal court has held, that section "merely lists requirements relating to a particular type of pen register … But that does not alter the statutory definition of a pen register stated in § 638.50(b)." *Shah*, 754 F. Supp. 3d at 930; *Moody*, 742 F. Supp. 3d at 1076 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."); *Walsh*, 2025 WL 2939229, at *18 ("[T]his, too, is insufficient to override the clear definition in Section [6]38.50(b) and the Court agrees with the *Shah* court's opinion reconciling these sections."); *Lesh*, 767 F. Supp. 3d at 41 ("The Court will not read the term "telephone" into Section 638.50 just because the word is used in another section of the statute that bears little relevance here.").

Defendant also cites to "the legislative history, which makes clear that the Legislature was not concerned with internet-based tracing when it enacted Section 638.51." MTD at 23:27-24:1. But "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024). And where, as here, the "text is clear," the Court's analysis "must end there." *Shah*, 754 F. Supp. 3d at 929. Regardless, the legislature materials Defendant cites "describe traditional telephone-based pen registers as being among the variety of electronic tools used by law enforcement … Nowhere in those materials did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional forms." *Id.* at 930 n.2 (cleaned up). And Defendant ignores the other piece of the legislative puzzle: that "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Id.* at 930 (cleaned

up); *see also Fregosa*, 2025 WL 2886399, at \*5 ("[T]he statute is not as limited as Mashable makes it out to be, and courts must not import restrictions untied to any statutory text, particularly when doing so would interfere with the statute's purpose.").

Finally, Defendant argues "[w]ere there any doubt [as to ambiguity in the statute], the benefit goes to PubMatic under the rule of lenity."  MTD at 24:6-7.  Courts have repeatedly rejected that rule's application to the CIPA §§ 638.50-638.51 because there is no "grievous ambiguity" in these provisions.  *See*, *e.g.*, *Riganian*, 2025 WL 2021802, at \*12 ("LiveRamp has argued for a certain interpretation of Section 638.50(b), but it has not established that any 'grievous ambiguity' in the statute's express language."); *Deivaprakash*, 2025 WL 2541952, at \*5 (same); *Garon*, 2025 WL 2522374, at \*6 (same); *Fregosa*, 2025 WL 2886399, at \*9 (same); *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (declining to apply rule of lenity to CIPA § 632.7).  *Sanchez v. Cars.com*, 2025 WL 487194 (Super. Ct. Los Angeles Cnty. Jan. 27, 2025)—which Defendant cites— "focused its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50." *Riganian*, 2025 WL 2021802, at \*12 (disagreeing with *Sanchez*); *Garon*, 2025 WL 2522374, at \*5 (same).

**B.    Defendant's Tracker Records "Routing, Addressing, Or Signaling Information" Transmitted By Plaintiffs' Computers**

Defendant contends that the Tracker is not a "pen register" because it "collects *incoming* information from users when they access third-party websites."  MTD at 23:16-17 (emphasis in original).  Again, the federal judiciary disagrees: web trackers are "pen registers" so long as they "record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [a] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue."  *Shah*, 754 F. Supp. 3d at 929; *Mirmalek*, 2024 WL 5102709, at \*4 (finding trackers were "pen registers" where "the instruments or facilities are users' computers or smartphones" and "the Trackers record the addressing information by instructing the user's browser to send the user's IP address to the Tracker") (cleaned up); *Scarlett*, 2025 WL 2614587, at \*4 (following *Shah*).  Plaintiffs allege those facts here. *See*, *e.g.*, FAC ¶¶ 73-74, 80, 147, 156-157, 163, 165, 179-180.  Regardless, even if Defendant is correct that

this information is "incoming" (and it is not), that would simply mean Plaintiffs have alleged the Tracker is a "trap and trace device." Cal. Pen. Code § 638.50(c).[6]

Defendant also contends that "under Plaintiffs' theory, any time a website collects [] information, even if necessary to make the website work, it violates Section 638.51 and subjects itself to both civil and criminal penalties. Plaintiffs' illogical reading – which would collapse the internet – should be rejected." MTD at 24:18-21. Defendant's histrionics aside—the Internet has not collapsed in the two years since 2023, when courts began applying this provision to the Internet— Defendant's "framing mischaracterizes the [F]AC." *Fregosa*, 2025 WL 2886399, at *7. Whether a website operator itself may collect information from website visitors as the intended recipient of those communications is immaterial. *See Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) ("While this information would ordinarily run afoul of § 638.51, courts have consistently found that the consent exception saves the day, as the recipient is the sole user of the caller ID system, and the recipient consented to its installation and use."). But Defendant is not a website operator here. It is a third party data broker. *See, e.g.*, FAC ¶ 14. And "[a] user who consents to disclose their IP address to [a website operator] as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers." *Shah*, 754 F. Supp. 3d at 932.

Thus, "[c]ourts have rejected similar attempts [to Defendant's] to dismiss complaints when the allegations involved transmission of data to third parties." *Fregosa*, 2025 WL 2886399, at *7. *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *2 (Super. Ct. Los Angeles Cnty. Jan. 28, 2025), which examined the legislative history rather than the plain text of the statute, is unpersuasive. *Garon*, 2025 WL 2522374, at *5 (disagreeing with *Aviles* and other cases); *Rose v. Variety Media, LLC*,

---

[6] The question of whether information is "incoming" or "outgoing" also depends on who the subject of the statute is. The CIPA was intended to protect those who make calls or communicate over the internet and have their information disclosed, not to protect those who are on the receiving end of this information. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002). Thus, the subject should be the individual user, and the user's information is thus "outgoing" to the various websites visited, rather than incoming as to the websites. *Shah*, 754 F. Supp. 3d at 929 ("All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to Fandom's website…"). Regardless, this question is academic than case-dispositive for the reasons stated above.

2025 WL 2794920, at *3 (Super. Ct. Los Angeles Cnty. Sep. 24, 2025) (finding several state court opinions unpersuasive because these cases give inadequate weight to the statutory text and structure"). Moreover, Defendant's Tracker records far "more than just [users'] IP address[es]." *Autotrader.com*, 762 F. Supp. 3d at 930. And whether or not website operators can collect any of this information themselves to facilitate website communications, Defendant's Tracker—which is used for "profiling and advertising" (*see, e.g.*, FAC ¶¶ 51-52, 56, 116-119, 127, 130-143)—have nothing to do with "operat[ing], maintain[ing], and test[ing] a[n] … electronic communication service." *Motorola Mobility*, 2025 WL 1939957, at *12; *see also Walsh*, 2025 WL 2939229, at *18 ("'Analytics Cookies' and 'Advertising Cookies' … are not used for billing, communication services, or similar purposes.") (cleaned up). Claiming the Internet cannot function without allowing Defendant to profile consumers is absurd.

**C.    There Is No Conflict With The CCPA, And The CIPA Applies Regardless Under The CCPA's Plain Text**

Last, Defendant argues that finding for Plaintiffs would "create conflict between the California Penal Code and the CCPA." MTD at 25:1. Specifically, Defendant contends the CCPA "adopts an opt-out – not an opt-in, or consent-only – framework," "which would conflict with the consent requirement under CIPA." *Id.* at 25 n.1. This is a fallacy. To be sure, the CCPA provides Californians with a right to opt-out of *further* data collection. But the CCPA does not enable companies to collect and disclose Californians' data without notice and consent in the first place. Quite the contrary, the CCPA states that "[a] business that controls the collection of a consumer's personal information shall, *at or before the point of collection*, inform consumers of" the types of data collected. Cal. Civ. Code § 1798.100(a) (emphasis added).[7] Thus, the "CCPA and CIPA are complementary." *Mirmalek*, 2025 WL 5102709, at *5; *Xu*, 2025 WL 3035016, at *3("[I]t does not appear that CCPA and CIPA are in conflict with one another."); *Rose*, 2025 WL 2794920, at *4 ("The Court does not see any problem, at this stage, with the overlap, if any, between CCPA and CIPA.").

_____
[7] That Defendant must register as a data broker does not mean its conduct here—which occurs without notice to and the consent of consumers—is permissible.

Even if there were a conflict between the statutes (and there is not), the plain text of the CCPA states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code. § 1798.175.  According to Defendant, there is a conflict because the CIPA prohibits conduct that the CCPA allegedly permits.  "Thus, by Defendant's own argument, CIPA should control." *Mirmalek*, 2025 WL 5102709, at *5; *Xu*, 2025 WL 3035016, at *3 ("Even if there was a conflict, the explicit language of the CCPA states that the law which affords the greatest protection should control. For this case, that law is the CIPA.").

## V.    PLAINTIFFS ALLEGE DEFENDANT WAS UNJUSTLY ENRICHED

Last, Defendant argues that Plaintiffs' unjust enrichment claim fails as "Plaintiffs do not allege how PubMatic defrauded them" and it is "mutually exclusive of Plaintiffs' other claims." MTD at 25:11-23.  Not so.  *First*, as the *Riganian* court held:

> Plaintiffs have alleged that [PubMatic] has unjustly profited from tracking, disclosing, and profiting from Plaintiffs and U.S. Class members' internet activity and real-world activity to third parties without [] knowledge or consent, conferring benefits at the expense of their privacy rights.

> Because the [FAC] contains detailed factual allegations as to how [PubMatic] has violated Plaintiffs' privacy rights to create a surveillance ecosystem at the heart of its revenue generation without their consent, Plaintiffs have sufficiently stated a claim for unjust enrichment.

*Id.* (cleaned up); *see also Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023).  *Second*, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Riganian*, 2025 WL 2021802 at *12 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  Thus, Plaintiffs may maintain their unjust enrichment claim.  *See also Walsh*, 2025 WL 2939229, at *20 (plaintiffs may "invoke the alternative pleading permissions of Rule 8" as to their unjust enrichment claim).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.  If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: November 4, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
     Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A**.
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
     klynn@bursor.com
     jwilner@bursor.com

*Attorneys for Plaintiffs*