Scott T. Lashway (admitted *pro hac vice*)
*slashway@mintz.com*
Mara A. O'Malley (admitted *pro hac vice*)
*momalley@mintz.com*
Mitchell J. Clough (admitted *pro hac vice*)
*mjclough@mintz.com*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: 617.542.6000
Facsimile: 617.542.2241

Marc H. Axelbaum (SBN: 209855)
*maxelbaum@mintz.com*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, California 94104
Telephone: 415.432.6000
Facsimile: 415.432.6001

*Attorneys for Defendant PubMatic, Inc.*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRSTIE SEMIEN, MICHAEL SELBY, GILBERT GAW, LOGAN MITCHELL, and JANE DOE, individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

PUBMATIC, INC.,

Defendant.

Case No. 3:25-cv-03164-SI

**REPLY IN SUPPORT OF PUBMATIC, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Date: January 23, 2026
Time: 10:00 a.m.
Courtroom: 1
Judge: Hon. Susan Illston

First Amended Complaint filed: September 29, 2025
Trial date: not yet set

## TABLE OF CONTENTS


Page

I. Plaintiffs have not adequately alleged any concrete Article III injury................................ 2

A. Plaintiffs still have not identified anything sensitive or embarrassing about the allegedly collected data........................................................................ 2

B. Plaintiffs cannot point to any allegations that their data were personally identifiable to them........................................................................ 3

II. Plaintiffs' allegations do not come close to the facts necessary to state a claim. ................ 6

A. Plaintiffs' invasion-of-privacy claim fails because Plaintiffs have no privacy interest in general web-browsing data, especially not in anonymized data. ........................................................................ 6

B. Plaintiffs' Amended Complaint does not allege facts supporting their CIPA § 631 and ECPA claims as a matter of law. ................................................ 9

1. Parroting the terms "in transit" and "real time" does not adequately allege interception................................................................ 9

2. Plaintiffs' Amended Complaint confirms no contents of "communications" were intercepted on the websites at issue................ 11

3. Plaintiffs' aiding claim is not supported by any factual allegations. ........................................................................ 11

4. The ECPA's crime-tort exception requires an intent to commit a further crime or tort, not merely an intent to intercept........................... 12

C. Plaintiffs' Opposition confirms that their pen-register theory would necessarily outlaw the internet. ............................................................ 13

D. Plaintiffs cannot claim the quasi-contract remedy of unjust enrichment. ............ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ........ 15

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 13, 14

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ........ 9

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 7

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........ 15

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 6, 7

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 11

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 4

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........ 2, 3

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ 11

*L.W.A. v. LinkedIn Corp.*,
2025 WL 2780788 (N.D. Cal. Sept. 30, 2025) ........ 9

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 3

*London v. New Albertson's, Inc.*,
2008 WL 4492642 (S.D. Cal. Sep. 30, 2008) ........ 7

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ... 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ... 6, 8

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ... 3, 4, 6

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ... 10

*Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*,
55 Cal. 4th 783 (2012) ... 14

*People v. Mitchell*,
46 Cal. App. 5th 919 (2020) ... 14

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ... 9

*Pica v. Delta Air Lines, Inc.*,
2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) ... 15

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... 2, 3, 4, 8

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ... 4

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ... 4, 5

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ... 12, 13

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ... 7

*Sanchez v. Glasscanopy, Inc.*,
2025 WL 1213283 (L.A. Cty. Super. Ct. Feb. 28, 2025) ... 15

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ... 11

*Sierra Club v. Superior Ct.*,
57 Cal. 4th 157 (2013) ... 14

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 2, 3, 6, 7

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) .......... 12

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

**Statutes**

Cal. Civ. Code
§ 1798.99.80 .......... 8
§ 1798.100 .......... 8
§ 1798.115 .......... 8
§ 1798.120 .......... 8
§ 1798.175 .......... 14

Cal. Penal Code
§ 638.51 .......... 14, 15
§ 638.52(d)(1), (3) .......... 14

**Legislative Materials**

Cal. Prop. 24 (California Privacy Rights Act), Gen. Elec., Nov. 3, 2020 .......... 8

Plaintiffs hang their opposition on recent cases against other defendants but fail to acknowledge that each contained dispositively different allegations. Unlike those cases, Plaintiffs have not alleged that PubMatic de-anonymizes any of their browsing data. Plaintiffs instead obfuscate, pointing to allegations that their data-access reports received from PubMatic identify "segments" into which they fit, such as "age, income levels, vehicles owned, spoken languages, and even what types of food and shows they like." But those segments -- which Plaintiffs acknowledge merely describe *groups* of individuals sharing non-defining characteristics -- do not identify *Plaintiffs*, as opposed to one of thousands of others in a segment of the populace. Notably, Plaintiffs do not (because they cannot) allege their data-access reports contain their name, address, email address, or other similar identifying information (concerns at issue in Plaintiffs' cited cases). And Plaintiffs do *not* cite Ninth Circuit precedent supporting their proposed expansion of the law to find a privacy injury based only on aggregated, anonymized web-browsing data. This makes sense -- the collection of anonymized web-browsing data does not concretely harm Plaintiffs.

Were Plaintiffs able to establish Article III standing (and they cannot), each claim fails on the merits. Their invasion-of-privacy claim fails for the same reason: there is no cognizable privacy interest in anonymized data. Nor is the aggregation of anonymized data an egregious privacy violation, especially considering California law expressly permits third parties, like PubMatic, to do so. Plaintiffs' barebones CIPA and ECPA allegations also fail. Plaintiffs have identified only conclusory allegations that the PubMatic pixel intercepts communications "in transit" or in "real time." Yet it is black-letter law that parroting the elements does not state a plausible claim under the Federal Rules. Plaintiffs must instead allege facts to proceed past the pleadings stage and be entitled to discovery. Nor can they base their claims on unspecified activities on other unnamed websites. Their pen-register claim fares no better because their argument ignores well-settled canons of statutory interpretation under California law, creates conflicts where they need not exist, and (contrary to their attempt to avoid the consequence of their statutory interpretation) threatens the illogical result of destroying the internet.

Plaintiffs' Complaint should be dismissed. Because Plaintiffs already amended in response to the same arguments in PubMatic's initial motion, dismissal should be without leave to amend.

## I. Plaintiffs have not adequately alleged any concrete Article III injury.

### A. Plaintiffs still have not identified anything sensitive or embarrassing about the allegedly collected data.

Recognizing that their allegations fail to satisfy the Ninth Circuit's standing analysis of a similar claim in *Popa*, Plaintiffs attempt to discard *Popa* as irrelevant because it "did not disturb pre-existing Article III standing jurisprudence." (Opp'n 3.) But *Popa* -- including its analysis of what allegations are required to make out an Article III injury based on an invasion of privacy -- squarely binds this Court. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). And *Popa* held that to do so, a plaintiff must allege that the information collected is "embarrassing, invasive, or otherwise private." *Id.* at 791. Plaintiffs here, just like the *Popa* plaintiff, base their claim on protected privacy rights "pitched at a high level of generality," which does not satisfy Article III. *See id.* at 792. *Popa* confirmed that general collection of web-browsing history does not cause a concrete injury in fact -- a holding recognized by numerous courts. *See, e.g.*, *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (no Article III standing under *Popa* "[a]bsent specific allegations about the type of browsing and geolocation information disclosed").[1]

Plaintiffs emphasize (at 3) that *Popa* confirmed that *Facebook* is good law, but *Facebook* satisfied *Popa*'s standard because the *Facebook* plaintiffs alleged that tracking "*occurred 'no matter how sensitive' or personal users' browsing histories were*." *Popa*, 153 F.4th at 794 (emphasis in original). Here, though, Plaintiffs (aside from Doe) do not allege anything even approaching "sensitive" information. Plaintiffs allege that PubMatic tracked their browsing activity on Zillow (real estate), Peacock (TV shows and movies), Bon Appetit (recipes), and Mindbloom (generally available health information), none of which is more sensitive than browsing history on a pet supply store that was insufficient in *Popa*. *See id.* at 791. Although they allege that PubMatic tracks their "sensitive" browsing activity, Plaintiffs' labels cannot plausibly allege

[1] Plaintiffs claim (at 4) that *Khamooshi* did not involve the sale of profiles to advertisers, but it did. *See* 2025 WL 2822879, at *4 (rejecting standing theory that defendant profited from the plaintiffs' data); *see also* First Am. Consol. Compl. ¶ 89, *Khamooshi*, No. 3:24-cv-07836-SK (N.D. Cal. June 3, 2025) ("shared and sold those users' profiles through the real-time bidding process and cookie syncing"), ECF No. 49.

an Article III injury -- especially because the specific data they allege, "travel information and health information" (FAC ¶ 67), is (without more specific allegations) not sensitive as a matter of law. *See Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no Article III injury from collection of plaintiff's browsing flight information on website); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (disclosure of searches and browsing history of "publicly available health information" did not reveal sensitive information).[2] And Plaintiffs cannot meet their Article III burden without "specific allegations about the type of browsing and geolocation" information disclosed. *Khamooshi*, 2025 WL 2822879, at *3.

Plaintiffs' attempts to distinguish *Popa* fail. They claim that *Popa* was different because the software was set up "to exclude the user's 'street number and zip code.'" (Opp'n 3.) But the complaint in *Popa* specifically alleged that the software collected the user's street name, city, and state. Excerpts of Record ("ER") at 38, *Popa*, No. 24-14 (9th Cir. Mar. 15, 2024); *see Popa*, 153 F.4th at 786–87 (noting only street number and zip code were masked). That still did not suffice, and Plaintiffs do not, in any event, allege PubMatic collects any specific location information. Plaintiffs also argue (at 3) that in *Popa*, there was no allegation that data were being sold to third parties. But the plaintiff there alleged that businesses can use the data captured "to sell it." ER at 24, *Popa*, No. 24-14 (9th Cir. Mar. 15, 2024). What's more, Plaintiffs here claim that the privacy injury "occurs at the point of interception without consent," regardless of what may be done with that information after. (Opp'n 8.) Plaintiffs cannot have it both ways.

### B. Plaintiffs cannot point to any allegations that their data were personally identifiable to them.

Aside from being foreclosed by *Popa*, Plaintiffs also cannot allege an Article III injury because they still have not pointed to any allegations demonstrating how the data collected were identifiable to them. Plaintiffs acknowledge that courts have repeatedly concluded that the collection and disclosure of anonymized web-browsing data does not cause any concrete Article III injury in fact. (Opp'n 4.) *E.g., Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22,

---

[2] Plaintiffs do not dispute that Doe fails to allege that any of her browsing on Mindbloom was sensitive because publicly available health information is not sensitive. (*See* Mot. 13.)

2024); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011). Yet Plaintiffs are unable to allege that PubMatic has de-anonymized protected data. One would expect Plaintiffs to identify their allegation that PubMatic possesses de-anonymized data. Instead, they continue to rest on their "could be" allegations, which do not meet their burden. *See Mikulsky*, 2024 WL 251171, at *5 (software's capacity to de-anonymize data not relevant to standing because allegations "do not pertain to Defendant or even purport to allege that these capabilities were executed by Defendant").

Plaintiffs' claim (at 4) that they are entitled to discovery ignores their pleading burden. Plaintiffs must demonstrate standing with plausibly alleged facts. *See Popa*, 153 F.4th at 788, 791. Plaintiffs instead cite cases where a defendant's expert declaration disputed the veracity of the plaintiffs' allegations, *see R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *2 (N.D. Cal. Mar. 28, 2025), or where a defendant squarely denied a plausible factual allegation, *see Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023).[3] But here, even taking their non-conclusory, plausible allegations as true, Plaintiffs do not allege that PubMatic aggregated data in any way identifiable to *Plaintiffs*, rather than an alphanumeric user number. Just as the allegations in *Popa* did not establish Article III standing where they were not plausible in light of other allegations, *see* 153 F.4th at 786–87 (refusing to accept allegation that "user's mailing address is captured" where screenshot the plaintiff included in complaint revealed street number and zip code were in fact masked), so too Plaintiffs cannot meet their burden here with their conclusory allegations of de-anonymization, which are expressly contradicted by the facts they actually allege.

Falling back on their familiar trope, Plaintiffs cite *Riganian v. LiveRamp Holdings, Inc.* (no less than 17 times) to support their conclusory allegation that data were de-anonymized here. 791 F. Supp. 3d 1075 (N.D. Cal. 2025). But *Riganian* involved very different technology. There, the plaintiffs alleged that LiveRamp had created a "private population registry with a unique ID *attached to each real-world identity*." *Id.* at 1082 (emphasis added). LiveRamp did so by allegedly "collect[ing] and purchas[ing] massive amounts of disparate and 'virtually unassociated' personal

[3] By failing to respond to PubMatic's argument (Mot. 8–9), Plaintiffs have waived any argument that IP addresses are personally identifiable.

information from countless sources both offline and online, *including names, addresses, phone numbers*, [and] digital and device identifiers." *Id.* at 1081 (emphasis added). LiveRamp then allegedly "synchronize[d] that aggregated data into a single 'identity profile.'" *Id.* LiveRamp allegedly used its "vast multi-sourced historical repository of consumer contact information" -- containing "'offline' identifiers such as names, phone numbers, postal addresses, social security numbers, and driver's license records" -- "to identify individual consumers" and even "follow" them across name changes or residence changes. *Id.* Indeed, LiveRamp itself allegedly claimed that it had "'resolved' the identities of more than 250 million consumers in the United States." *Id.* The plaintiffs' data-access reports in *Riganian* even revealed that LiveRamp had "compiled decades of offline data *such as . . . name, postal address history, and phone numbers* that LiveRamp linked to online identifiers like cookies, device IDs, and smart TV IDs." *Id.* at 1082 (emphasis added); *see also id.* at 1082–83. The court therefore concluded that "any anonymity" was "functionally meaningless" because LiveRamp allowed customers to seek information about consumers just by providing their "name, physical address, or email address." *Id.* at 1087. Similarly, *Selby v. Sovrn Holdings, Inc.* (which Plaintiffs cite no less than 8 times) alleged the correlation of online data with "email address and other personal identifiers." 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025).

Plaintiffs here allege no such thing. Plaintiffs never allege that PubMatic's profiles contain their names, addresses, or phone numbers. They also never allege that PubMatic synchronizes its data with social security numbers or driver's license records. *Cf. Riganian*, 791 F. Supp. 3d at 1081.[4] Indeed, although Plaintiffs requested and received their data-access reports from PubMatic, they tellingly do not allege that those reports contained this information (unlike in *Riganian*, where the reports did). *See id.* Nor do Plaintiffs allege (because they cannot allege) that anonymity is "meaningless" (like it was in *Riganian*) because PubMatic can match profiles based on requests using names, addresses, or email addresses. Plaintiffs instead allege only that PubMatic has compiled a profile on a user associated with anonymous user IDs that list various segments of interest -- and Plaintiffs acknowledge that "[s]egments are *groups of users who share certain*

---

[4] Plaintiffs merely allege that PubMatic aggregates the data with some unspecified "offline information." (FAC ¶ 287.)

*characteristics*." (FAC ¶ 241 (emphasis added).) Even those segments do not identify *Plaintiffs*.

Plaintiffs' reliance on *Facebook* is misplaced for similar reasons. True, the plaintiffs there alleged Facebook compiled URL information "into personal user profiles using 'cookies.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020). But they also alleged "Facebook gained a cradle-to-grave profile without users' consent" "by correlating users' browsing history with users' *personal Facebook profiles* -- profiles that could include a user's employment history and political and religious affiliations." *Id.* at 599 (emphasis added). The information collected was thus "personalized information" linked to them, which is why they had "adequately alleged that Facebook's tracking and collection practices would cause harm . . . to their interest in controlling their *personal information*." *Id* (emphasis added).[5] So they had standing because their "sensitive" browsing history was linked to the personally identifiable information on their Facebook profiles (which obviously includes their names). Again, no such linkage is alleged here.

While Plaintiffs argue their data are de-anonymized, they do not actually allege that in their Amended Complaint -- even after PubMatic pointed out this fatal flaw in its motion to dismiss the original complaint. Plaintiffs' failure to allege that the data are actually de-anonymized, rather than just possibly de-anonymizable (*see* Opp'n 4 ("to standardize, *if not* deanonymize" (emphasis added)), is both telling and dispositive. *See, e.g.*, *Mikulsky*, 2024 WL 251171, at *5 (standing cannot be based on allegations of software's capabilities that were not actually used on plaintiffs).

Plaintiffs lack standing, and their Amended Complaint should be dismissed entirely.

## II. Plaintiffs' allegations do not come close to the facts necessary to state a claim.

### A. Plaintiffs' invasion-of-privacy claim fails because Plaintiffs have no privacy interest in general web-browsing data, especially not in anonymized data.

At bottom, Plaintiffs' theory rests on the faulty assumption that a reasonable website user expects that there is no tracking on the internet. But pleading a claim for invasion of privacy is a "high bar," *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), and Plaintiffs'

---

[5] *Facebook*'s holding, to the extent it rests solely on the violation of CIPA and the Wiretap Act to find a concrete Article III injury (*see* 956 F.3d at 598), also does not survive *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

assumption has been rejected by other courts in this district and Circuit, *e.g.*, *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). There is no reasonable expectation of privacy on the internet regardless of whether the alleged tracker was the website operator or a third party chosen by the website operator. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (collecting numerous cases and dismissing claim for lack of adequate expectation of privacy where third-party session-replay software was installed). Almost a decade ago the Third Circuit recognized that "[m]ost of us understand that what we do on the Internet is not completely private." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016). The court made clear then that data "feed[] an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate" as we browse the internet, all while "the data-collecting infrastructure of the digital world hums along quietly in the background." *Id.* And although it is true there is "no *per se* rule that 'there can never be a reasonable expectation of privacy over internet activity,'" (Opp'n 6 (citing *Thomas*)), Plaintiffs conveniently ignore that the *Thomas* court said the exception to the rule was cases where the defendant represented it would *not* track users but allegedly did. Plaintiffs allege nothing of the sort here, which is yet another reason *Facebook* (cited repeatedly by Plaintiffs) is off point. *See* 956 F.3d at 602 ("Plaintiffs have plausibly alleged that Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway").

Plaintiffs' serial responses do not change this basic fact. *First*, and most importantly, they cannot fit their invasion-of-privacy claim with the reality that the data are, by their own allegations, all anonymized. (*See supra* at 3–6.) The only case they cite (at 8), *Frasco v. Flo Health*, is of no help to them. *Frasco* acknowledged Ninth Circuit precedent holding there is no Article III "injury due to invasion of [] privacy" from (and thus no invasion of privacy for) "the aggregate collection and storage of non-individually identifiable" data. 349 F.R.D. 557, 580 (N.D. Cal. 2025) (citing *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017)); *see also Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (no reasonable expectation of privacy in "anonymized data"); *London v. New Albertson's, Inc.*, 2008 WL 4492642, at *8 (S.D. Cal. Sep. 30, 2008) (similar). *Frasco* ultimately responded to the argument only by falling back on the fact

that the plaintiffs had alleged that the health data were disclosed "along with data that could be used to identify individuals" -- *i.e.*, *not* anonymized. 349 F.R.D. at 580. Here, though, Plaintiffs have not alleged the data are de-anonymized. Indeed, although they demand discovery on the issue, they tellingly concede their data-access reports revealed *no* de-anonymized data.

*Second*, contrary to Plaintiffs' argument (at 8–9), the collection of web-browsing data is not only routine commercial behavior, it is commercial behavior expressly permitted by California law. Proposition 24, which enacted the California Consumer Privacy Act ("CCPA"), expressly acknowledged that "advertising businesses . . . track [consumers] across the internet, and . . . create detailed profiles of their individual interests." Cal. Prop. 24 (California Privacy Rights Act), Gen. Elec., Nov. 3, 2020 (amending Cal. Civ. Code § 1798.100 et seq.), § 2(I). But, far from rejecting those activities as violating the right to privacy, California law expressly allows companies to engage in that behavior, opting for an opt-out rather than an opt-in (or consent-based) scheme. *See* Cal. Civ. Code §§ 1798.115, 1798.120(a)(1). Plaintiffs' contention -- that the collection here is highly offensive even though authorized by California law -- defies logic.[6]

*Third*, they do not dispute that there is nothing private about going to an open house, a bookstore, or a movie theater, yet claim (at 7) browsing the web for the same purposes is somehow different and private because here, there is a "secret individual following Plaintiffs around." There was such a "secret" individual in *Popa* (Microsoft's software), and the Ninth Circuit found no difference between that software and a store clerk observing shoppers. 153 F.4th at 791. The CCPA also explicitly contemplates the collection of user data by third parties "with whom the business does not have a direct relationship." Cal. Civil Code § 1798.99.80(c). And, even if someone was secretly watching Plaintiffs shop for real estate, books, or movies, an invasion-of-privacy claim at bottom requires the "intrusion into a *private* place, conversation or matter" -- none of which they have alleged here. *Low*, 900 F. Supp. 2d at 1025.

*Fourth*, they do not dispute -- and thus concede -- that they have no reasonable expectation

[6] Plaintiffs claim that the collection here is different from other cases because in those cases, the collection was more limited. But Plaintiffs do not explain why a user can have no expectation of privacy as a matter of law on a single website containing alleged tracking software yet has a reasonable expectation that the same software would not be present on other websites.

of privacy in individual pieces of data, including "browser and device information, account IDs, or IP addresses, or [] URLs." (Mot. 13; Opp'n 7–8.)

Finally, Doe has failed to meet her pleading burden that she did not consent to the data collection from Mindbloom. She claims PubMatic must present specific evidence of what she agreed to, but she cites cases concerning arbitration agreements where it was the defendant's burden. To plead her claims, Doe "must do more than merely assert that [she] did not consent to the tracking devices." *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) (dismissing CIPA, ECPA, and invasion-of-privacy claims where the website had a privacy policy, but plaintiffs alleged only the conclusion that they did not consent). She also cannot meet her pleading burden by hiding the date on which she signed up for a Mindbloom account and then blaming PubMatic for not guessing which date was applicable.[7] And Doe has not alleged or even argued that the webpage is *not* how it appeared when she signed up. Nothing about the webpage negates Doe's consent, either. The notice appears directly below the sign-up button. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 928 (N.D. Cal. 2024) (enforcing terms that appeared directly below the sign-up button). Hyperlinks do not have to be in a contrasting color to provide adequate notice, and the hyperlinks are in bold font and are larger than the surrounding text, emphasizing the hyperlinks to the Privacy Policy. *See, e.g.*, *L.W.A. v. LinkedIn Corp.*, 2025 WL 2780788, at *4 (N.D. Cal. Sept. 30, 2025) ("while the hyperlinks are not marked in blue, they are in bold and underlined, making them stand apart from the other text in the sentence"). Although Doe claims that the Privacy Notice must inform her of what PubMatic would do with the data after alleged interception in order for her to consent, the fact is that she consented to the interception -- which is precisely what she claims is her injury here. (*See* Opp'n 8.)

**B. Plaintiffs' Amended Complaint does not allege facts supporting their CIPA § 631 and ECPA claims as a matter of law.**

***1. Parroting the terms "in transit" and "real time" does not adequately allege interception.***

Aside from baldly alleging that the "interceptions happened in real time," Plaintiffs do not

---

[7] Doe claims the relevant date is November 2024, but she alleges she purchased treatment at some unknown time in 2021, which was when she signed up for an account. (FAC ¶ 258.)

point to any *facts* supporting their claim that the interception occurred while the communication (which they appear to claim is their request to the website operator in the form of a URL) was still in transit to the website operator. (*See* FAC ¶ 1 ("tracks in real time"); ¶ 166 ("collects the URL for the page visited by the user as the user clicks on a particular link or article (i.e., in real time)"); ¶ 181 ("collects the detailed, full-string URL of each page of the Bon Appetit website as the user visits the page (i.e. in real time)"); ¶ 230 ("interceptions happened in real time as the information was entered into the Zillow website"); ¶ 246 (same for Bon Appetit website).)

Once again, Plaintiffs rely on cases with starkly different allegations. In *Jones v. Walt Disney Co.*, the plaintiffs alleged that the pixels were installed on the users' devices and then tracked user browsing. 701 F. Supp. 3d 942, 962 (N.D. Cal. 2023).[8] Here, though, Plaintiffs allege that the pixels are installed on *websites*, not on devices. For example, Plaintiffs allege that when a Partner Tracker is "loaded onto [a] website," other Partner Trackers are then "called onto the [] website." (FAC ¶¶ 189, 192.) Plaintiffs allege only that cookies (*i.e.*, small bits of text) are loaded onto devices, but they do not allege (because they cannot) that those cookies are what allegedly tracks them. Those cookies identify users only "[w]hen the user subsequently visits one of the Websites," at which point the pixel "locates the cookie identifiers." (FAC ¶ 74.) But those pixels, by Plaintiffs' own account, load only *after* the website has been called by Plaintiffs' URL input and loads. (*See* FAC ¶ 146 ("As soon as the individual reached the Zillow website, the PubMatic Tracker installs tracking cookies on the individual's browser as described herein.").) Nor do Plaintiffs' cited examples -- FAC ¶¶ 163–66, 181, 230, 246, 257 -- demonstrate how the data they point to were somehow collected *before* the website had already loaded, which is necessary to make out a claim of interception under both CIPA § 631 and the ECPA. Electronic communication, like a website loading, is completed in a matter of milliseconds. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014). But that does not mean technology that moves quickly necessarily intercepts in transit. *See id.* (because of the speed of electronic

---

[8] *Doe v. Call-On Doc, Inc.* is even further afield; the plaintiffs alleged the pixels captured information being entered into the website, including email addresses and phone numbers. 2025 WL 1677632, at *2 (S.D. Cal. June 13, 2025). Again, Plaintiffs here allege the only "communication" PubMatic collects is their URLs, not any information entered into the website.

communications, "interception . . . within the prohibition of the [ECPA] is virtually impossible").

### 2. *Plaintiffs' Amended Complaint confirms no contents of "communications" were intercepted on the websites at issue.*

Plaintiffs appear to argue that merely alleging that URLs were intercepted automatically alleges that contents of communications were intercepted. (Opp'n 12.) But that argument collides head-first with Ninth Circuit precedent. (*See* Mot. 18–19.) The Ninth Circuit has held that a URL can contain "content" of a communication under CIPA and the ECPA only "under some circumstances." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). That happens when the URL contains, for example, search terms that the user had communicated. *Id.* (*See* Opp'n 12 (citing *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024)) ("URLs *which disclose search terms* . . . are 'contents' of communications" (emphasis added)).) But where the URL merely contains "basic identification and address information, not a search term or similar communication made by the user," the URL "does not constitute the contents of a communication." *Zynga*, 750 F.3d at 1109. The only website on which Plaintiffs identify the collection of URLs detailed enough to show search terms is Zillow.[9] For the rest, they vaguely allege only the collection of some URLs (*see* Mot. 19–20 (analyzing the allegations as to each website)), which is simply not enough. *See, e.g.*, *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (vague allegations, without identifying "with specificity" what the URLs contained, are insufficient). Because Mitchell, Gaw, and Doe do not support their allegations with facts rather than generalized conclusions, they fail to allege that the contents of their communications were intercepted. Nor can they base their claims on unspecified URLs not alleged in their complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (courts "may not look beyond the complaint to . . . opposition to . . . motion to dismiss").

### 3. *Plaintiffs' aiding claim is not supported by any factual allegations.*

Plaintiffs' "aiding" claim fares no better. Once again, Plaintiffs assume that all pixel technologies work the same. They offer no argument, and cite no allegations, supporting their

---

[9] Plaintiffs misrepresent PubMatic's argument. PubMatic did not argue that Plaintiffs inadequately alleged content as to the Zillow URLs. (Mot. 19.)

claim that the Partner Trackers intercepted any communication in transit, instead referring back to their argument about why *PubMatic*'s technology allegedly did so. (*See* Opp'n 13.)

Nor do they respond to PubMatic's argument that Plaintiffs' allegations reveal that PubMatic's pixel is involved only after any interception by the Partner Trackers has already occurred. (Mot. 21.) They instead posit (at 13) that because the information those pixels allegedly intercepted is more valuable when PubMatic provides information after the fact, PubMatic aided the interception. Yet they do not explain how that aids the Partner Trackers in "*the wiretapping*" itself. (*See* Opp'n 13.) By Plaintiffs' own allegations, any wiretapping is already complete by the time the PubMatic pixel is "called" onto the website by the Partner Tracker. (*See* FAC ¶ 196.)

#### **4. *The ECPA's crime-tort exception requires an intent to commit a further crime or tort, not merely an intent to intercept.***

Finally, Plaintiffs misconstrue PubMatic's argument in their attempt to avoid the application of the ECPA's consent bar. (Plaintiffs do not dispute that the website and app developers consented to PubMatic's alleged interception.) PubMatic never argued that "the crime-tort exception cannot apply if its [*sic*] was primarily financially motivated." (Opp'n 14–15.) Instead, what PubMatic argued is that under binding Ninth Circuit precedent, the ECPA's crime-tort exception applies only when "the purpose for the interception -- its intended use -- was criminal or tortious." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). The Ninth Circuit in *Sussman* made clear that "[w]here the purpose is not illegal or tortious, but the means are," then the crime-tort exception does not apply. *Id.* at 1202–03. Plaintiffs instead must allege "that the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (citation omitted). Plaintiffs, however, have not alleged that PubMatic intended to injure plaintiffs. And their contention that the mere correlation of allegedly intercepted data constitutes a separate, tortious purpose is foreclosed by precedent that they themselves cite. *Katz-Lacabe v. Oracle Am., Inc.*, cited by Plaintiffs (at 21), makes clear that "[t]he mere possibility Oracle's data collection activities could at some future date be deemed tortious does not justify application of the crime-fraud exception in these circumstances" because "a culpable mind does not accompany every tortious

act." 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023); *see id.* at *1 (alleging that Oracle "synchronizes . . . data to create individual profiles . . . and monetizes the data by selling it").

Plaintiffs' reading of the crime-tort exception would also obliterate it. According to Plaintiffs, an invasion of privacy occurs the moment that their interactions are intercepted. (*See* Opp'n 8.) In other words, every interception (in their view) constitutes both a violation of the ECPA and an invasion of privacy, meaning the crime-tort exception would necessarily be satisfied. That is why the focus is on the defendant's intent, not on whether the interception also happens to constitute a tort. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 515, 518 (S.D.N.Y. 2001) (noting the legislative history of the ECPA "make[s] clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly" such that only an "'insidious' intent to harm plaintiffs or others" is sufficient to apply the exception).

**C. Plaintiffs' Opposition confirms that their pen-register theory would necessarily outlaw the internet.**

Plaintiffs now claim that the pixel is at least a trap-and-trace device, but that is not what they allege in their Amended Complaint. (FAC ¶ 314 ("The PubMatic Tracker . . . is a 'pen register[]'").) Their allegations also do not support that claim. They instead allege that PubMatic's pixel tracks outgoing data. Indeed, they explain the opposite: what the PubMatic pixel allegedly installs or "downloads" are "tracking cookies," and the pixel recognizes those cookies "[w]hen the user subsequently visits one of the Websites," at which point "the PubMatic Tracker locates the cookie identifiers stored on the user's browser." (FAC ¶¶ 73–74, 146.)

Either way, Plaintiffs' claim fails on the merits for several reasons. *First*, they claim (at 18) that there is nothing ambiguous about the statute. Judge Chhabria disagrees. As he recently put it, "CIPA is a total mess." *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Even courts have struggled to "apply CIPA's already-obtuse language to new technologies," having "reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute." *Id.* He applied the rule of lenity to narrow CIPA just last month, recognizing that "[c]ourts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject

them to liability." *Id.* It is hardly clear to a business -- particularly those that operate on the internet -- that they must obtain consent before collecting a user's IP address, especially when CIPA's pen-register provisions say nothing about the internet at all, only telephones.

*Second*, Plaintiffs' argument relies on the wrong tools of statutory construction. Though they cite (at 17) the U.S. Supreme Court's rules for interpreting federal law, the task here is to interpret California law. Under California law, the "fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose." *Sierra Club v. Superior Ct.*, 57 Cal. 4th 157, 165 (2013). It is just the first step to look at the text. *See id.* Even so, the text must be read not "in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." *Id.* But where "the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *Id.* at 166. Plaintiffs' argument again fails at both turns. True, several federal courts have concluded that web trackers can be pen registers. But they have done so by looking at § 638.51 in isolation, ignoring the fact that the "context of the statutory framework" reflects that § 638.51 is focused on telephones. *See* Cal. Penal Code § 638.52(d)(1), (3). Plaintiffs claim (at 17) that the surrounding context reflects § 638.52 was focused only on specific types of pen registers but ignore the "illogical result" that the Legislature would authorize law enforcement to use some types of pen registers and not others. *See People v. Mitchell*, 46 Cal. App. 5th 919, 929 (2020) (California courts "avoid interpreting statutes in a manner that may produce illogical results"). That alone creates "more than one reasonable interpretation," *Sierra Club*, 57 Cal. 4th at 166, and Plaintiffs offer no response to the countless references in the legislative history to *telephonic* -- not electronic -- pen registers.

*Third*, Plaintiffs contend that were there any conflict between CIPA and the CCPA, CIPA controls. But the CCPA also instructs that "wherever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of [the CCPA]." Cal. Civ. Code § 1798.175. It is a basic canon of California statutory construction that courts limit statutes where a broader reading would "overrid[e]" other statutes, "effect[ing] an implied partial repeal of them." *Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*, 55 Cal. 4th 783, 805–06 (2012).

*Fourth*, Plaintiffs' reading of § 638.51 would indeed conflict with the CCPA. They emphasize (at 20) that the CCPA requires a business to "at or before the point of collection" inform users of the information collected. But Plaintiffs' theory here is that, under the plain language of § 638.51, the defendant must obtain the user's consent *before* collecting their IP address. Thus, Plaintiffs' own telling of § 638.51 writes out a portion of the CCPA, which allows parties to inform "at . . . the point of collection," not only before.

*Finally*, it is not "histrionics": Plaintiffs have offered no tenable limiting principle that would avoid criminalizing countless website operators. They claim (at 19) the statute carves out website operators but not third parties. But CIPA's pen-register consent provision (§ 638.51(b)) applies only to "[a] provider of electronic or wire communication service" -- a term undefined by CIPA, but which has been interpreted to mean "one who provides internet (or other communication) service, not one who provides miscellaneous services via the internet." *Sanchez v. Glasscanopy, Inc.*, 2025 WL 1213283, at *4 (L.A. Cty. Super. Ct. Feb. 28, 2025). Indeed, Plaintiffs make no attempt to explain how the websites here "provide[] . . . electronic or wire communication service[s]." *Cf. Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *7 (C.D. Cal. Feb. 14, 2019) (website operator not the "provider of the electronic communication service" under federal law). Plaintiffs' interpretation thus threatens countless website operators with liability under § 638.51, because they do not dispute that websites need a browser's IP address to operate.

**D. Plaintiffs cannot claim the quasi-contract remedy of unjust enrichment.**

A party cannot bring an unjust enrichment claim that is duplicative of their tort or statutory claims. *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011). Nor can Plaintiffs preserve this claim as a ground to seek restitution. "In California, 'there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution.'" *Silver v. Stripe Inc.*, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021). "As a result, courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *10 (N.D. Cal. Aug. 30, 2019).

* * *

Plaintiffs' Amended Complaint should be dismissed without leave to amend.

Dated: November 18, 2025

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By: */s/ Scott T. Lashway*

Scott T. Lashway
(admitted *pro hac vice*)
Marc H. Axelbaum
Mara A. O'Malley
(admitted *pro hac vice*)
Mitchell J. Clough
(admitted *pro hac vice*)

*Attorneys for Defendant PubMatic, Inc.*