UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KIRSTIE SEMIEN, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>PUBMATIC INC.,<br><br>            Defendant. | Case No. 25-cv-03164-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

Before the Court is defendant PubMatic's motion to dismiss plaintiffs' putative class action. Dkt. No. 35. Pursuant to Civil Local Rule 7-1(b), the Court found this matter appropriate for resolution without oral argument and vacated the hearing. Having considered the papers submitted, and for good cause shown, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss.

## BACKGROUND

Plaintiffs bring this putative class action against defendant PubMatic Inc. ("PubMatic"). Defendant PubMatic is a registered data broker.[1] Dkt. No. 34, First Amended Complaint ("FAC") ¶ 50. PubMatic operates the PubMatic pixel, which plaintiffs allege "collects information from users' browsers and devices when they visit the websites of PubMatic's publisher clients' websites." *Id.* ¶ 50. This order assumes the reader's familiarity with defendant's pixel tracking technology, described in detail in the FAC. *Id.* ¶¶ 50-126. In addition to its pixel, PubMatic offers technology

---

[1] A "data broker" is a "business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct [*i.e.*, consumer-facing] relationship." FAC ¶ 13; Cal. Civ. Code § 1798.99.80(c).

products to clients including real-time bidding and its Identity Hub. *Id.* ¶ 127. "Real-time Bidding (RTB) is an online advertising auction that uses sensitive personal information to facilitate the process to determine which digital ad will be displayed to a user on a given website or application." *Id.* ¶¶ 27, 136. The Identity Hub allows PubMatic's clients to "integrate the data they have collected with PubMatic own's [*sic*] aggregated user data." *Id.* ¶ 203. This in essence allows PubMatic's clients to create profiles of users' identities across multiple platforms and use that information for targeted advertising. *Id.* ¶¶ 116-117.

Plaintiffs are natural persons and citizens of California allegedly tracked by PubMatic. *Id.* ¶¶ 4-7. Specifically, plaintiff Gilbert Gaw alleges that the PubMatic pixel collected information including "the webpages he visited, his IP address, and fingerprint information about his device and browser" while he browsed the Peacock website in January of 2024. *Id.* ¶¶ 215. Plaintiff Gaw alleges that defendant possessed and likely sold various targeted advertising segments[2] where Gaw was placed based on highly personal data including, age, credit risk, yearly household income, affluence level, field of study, and confidence in keeping a budget. *Id.* ¶¶ 225.

Plaintiff Michael Selby alleges that the PubMatic pixel collected information including "the full-string URL of each page of the website" he visited and "his geographic location and the specific properties that plaintiff Selby clicked on and viewed" while he browsed the Zillow website in December of 2024. *Id.* ¶¶ 215. Plaintiff alleges that defendant possessed and likely sold various targeted advertising segments where plaintiff Selby was placed. *Id.* ¶ 241.

Plaintiff Logan Mitchell alleges that the PubMatic pixel collected information including information about his device and browser, and "the full-string URL of each page of the website" plaintiff Mitchell navigated to while he browsed the Bon Appetit website in February 2025. *Id.* ¶¶ 244-245. Plaintiff alleges that defendant possessed and likely sold various targeted advertising segments where plaintiff Mitchell was placed based on highly personal data including, age, credit score and types of credit products accessed, yearly household income, estimated amount spent on dining out, specific places visited, genres of television viewed, makes and models of vehicles

---

[2] "Segments" are groups of users who share certain characteristics, which are used for targeted advertising. FAC ¶ 225.

owned, types of preferred food, specific products purchased at the supermarket, language spoken in the home, when last career change occurred, and levels of investable assets. *Id.* ¶ 256.

Plaintiff Jane Doe alleges that partner pixels and the PubMatic pixel collected information including her IP address, information about her device and browser, fingerprint information, and "the URL of each page of the website plaintiff Doe visited" while she browsed the Mindbloom website for ketamine therapy treatment options in November 2024. *Id.* ¶¶ 258-262.

Each named plaintiff also alleges that PubMatic compiled the information it gathered into a profile on plaintiff, and that plaintiffs were unaware of and did not consent to PubMatic's conduct. *Id.* ¶¶ 205-208, 233-236, 248-251, 265-268.

Plaintiffs bring five claims against PubMatic: intrusion upon seclusion under California common law (Count I); violations of provisions of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631(a) and 638.51 (a) (Counts II and III), unjust enrichment (Count IV), and violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 (Count V).

On October 14, 2025, PubMatic moved to dismiss plaintiffs' first amended complaint for lack of subject matter jurisdiction and failure to state a claim.[3]  Dkt. No. 35.  Plaintiffs filed a response[4], and PubMatic filed a reply.  Dkt. Nos. 40, 42.


**LEGAL STANDARD**

## I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint.  As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject

---

[3] Plaintiffs filed their complaint on April 8, 2025. Dkt. No. 1. Defendant filed an unopposed motion to extend time to respond, which the Court granted. Dkt. Nos. 11, 12. After defendant filed a motion to dismiss on August 15, 2025, plaintiffs filed their first amended complaint (FAC). Dkt. Nos. 29, 34.

[4] Plaintiffs also filed three "Statements of Recent Decision" pursuant to Local Rule 7-3(d). Dkt. Nos. 43, 44, 45.

matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual."). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

(citations and internal quotation marks omitted).

## DISCUSSION

### I.    Judicial Notice

PubMatic seeks judicial notice of Mindbloom's Privacy Policy and Sign-Up Page, arguing that the policy and Sign-Up Page are publicly available facts not subject to reasonable dispute, are integral to plaintiff Jane Doe's claims, and are incorporated by reference into the FAC even if not explicitly stated. Dkt. No. 36, Request for Judicial Notice ("RJN") at 3-4, Exs. A & B. PubMatic also seeks judicial notice of legislative reports and committee analyses concerning California Senate Bill 690 (2025) ("SB 690") and California Assembly Bill 929 (2015) ("AB 929"). RJN at 5, Exs. C-F. PubMatic argues that courts may take judicial notice of legislative bills, and that these are public records that are undisputed. *Id.*

As a general rule, courts may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Court DENIES PubMatic's request for judicial notice of Exhibits A and B. The Court will not consider documents beyond the pleadings and draw inferences from those documents in PubMatic's favor. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."). Plaintiffs did not reference the Mindbloom Privacy Policy or Sign-Up page in the complaint, so they are not incorporated by reference. The Privacy Policy does not form the basis of plaintiff Doe's claim that PubMatic invaded her privacy by "installing trackers on her browser, aiding in the wiretapping of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    her communications, deanonymizing her personal data, or collecting, selling, and disclosing her

2    personal data, including data about her medication and health status, to advertising technology

3    companies, other data brokers, or any person or entity doing business with Defendant."  FAC ¶ 267.

4    In addition, the issue of whether Mindbloom properly obtained consent is a factual question to be

5    resolved on summary judgment or at trial.

6         The Court GRANTS PubMatic's request for judicial notice of Exhibits C-F.  Because courts

7    regularly take judicial notice of government documents, and plaintiffs do not dispute the authenticity

8    of the SB 690 Analysis by the Senate committee on Public Safety, SB 690, and the two AB 929

9    documents, the Court finds it proper to consider them on this motion to dismiss.  *See Anderson v.*

10   *Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

11

12   **II.    Article III Standing**

13        The parties dispute whether plaintiffs have Article III standing to bring their claims against

14   PubMatic.  PubMatic argues that the Court should dismiss plaintiffs' claims for lack of subject

15   matter jurisdiction because plaintiffs do not allege "highly offensive" privacy injuries sufficient to

16   confer Article III standing.  Mot. at 6-10.  Plaintiffs respond that they establish an injury in fact

17   because PubMatic "compiled detailed profiles by tracking [Plaintiffs'] interactions across many

18   websites, including websites where they disclosed sensitive data and selling that information to any

19   and all interested advertisers."  Opp'n at 2.

20        Federal courts may only hear a case if plaintiffs can show they have standing to sue.  *Spokeo,*

21   *Inc. v. Robins*, 578 U.S. 330, 338 (2016, revised May 24, 2016).  To establish standing to sue,

22   plaintiffs must show an injury, trace that injury to the defendant's conduct, and prove that courts

23   can provide adequate redress for the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

24   The injury "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l*

25   *USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted).  Intangible harms

26   may constitute concrete injuries if they bear a "close relationship to harms traditionally recognized

27   as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413,

28   425 (2021).  "[B]oth the common law and the literal understandings of privacy encompass the

6

United States District Court
Northern District of California

1    individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm.*

2    *For Freedom of Press*, 489 U.S. 749, 763 (1989).

3        PubMatic contends that the Ninth Circuit's decision in *Popa v. Microsoft Corp.,* forecloses

4    plaintiffs' claims.  *See* 153 F.4th 784, 791 (9th Cir. 2025).  In *Popa*, the Ninth Circuit affirmed the

5    district court's dismissal for lack of Article III standing where plaintiff alleged defendant's session-

6    replay technology captured her information while she browsed for pet supplies on a single website,

7    https://www.petsuppliesplus.com, because the nature of the collected information was not

8    "embarrassing, invasive, or otherwise private."  *Id.* at 786-87, 791.  The information defendant

9    Microsoft collected allegedly included: the date the user visited the website, the device the user

10    accessed the website on, the type of browser the user accessed the website on, the operating system

11    of the device used to access the website, the country where the user accessed the website from, a

12    user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how

13    far down a webpage a user scrolls, the user's mailing address with the street number and zip code

14    omitted, and the pet supplies products the user clicked on.  *Id.*

15        However, here, plaintiffs allege a more invasive injury.  Plaintiffs allege that PubMatic

16    compiled detailed user profiles by tracking plaintiffs' interactions across many websites, including

17    sensitive browsing activity, without plaintiffs' knowledge or consent.  FAC, ¶¶ 67-69. Plaintiffs

18    allege that the PubMatic pixel intercepts communications that can include sensitive information like

19    health status and treatment, travel plans, political affiliation, sexual orientation, and more.  *Id.* ¶¶

20    61-62. User profiles allegedly include a wide range of information, including information about

21    credit scores, genres of television viewed, makes and models of vehicles owned, types of preferred

22    food, specific products purchased at the supermarket, and language spoken in the home.  *Id.* ¶ 256.

23    Plaintiffs also allege that PubMatic tracked plaintiffs' future web-browsing activity across the

24    internet.  *Id.* ¶ 153

25        Unlike in *Popa*, which involved non-sensitive browsing activity on a single pet supply

26    website, here plaintiffs allege that PubMatic created or added to detailed user profiles by tracking

27    their interactions across the internet, and that this tracking remains ongoing.  Accordingly, this

28    situation is more akin to *In re Facebook, Inc., Internet Tracking Litigation*, finding Article III

standing where plaintiffs "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information."    956 F.3d 589, 596 (9th Cir. 2020).[5]    As in *In re Facebook*, PubMatic allegedly "gained a cradle-to-grave profile without users' consent."  *See id.* at 599.  ("As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives.").

The Court is also unpersuaded by PubMatic's argument that plaintiffs lack standing because the personal information PubMatic's pixel collected is anonymous.  Mot. at 3, 8-10; Reply at 4-6. PubMatic argues that it collects information tied to a user ID, not to "a specific individual," and that "even if someone with the user ID 'user 123' can be associated with certain browsing history and related information, those data are still anonymous without plausible allegations that PubMatic discloses that user123 is a specific person."  Mot. at 10.  Beyond allegations of PubMatic's technology's capacity to de-anonymize data, plaintiffs claim that PubMatic products do identify and "de-anonymize users."  FAC ¶ 45.  Plaintiffs allege that PubMatic "effectively 'stamps' each cookie with its own identifier to better enable it to track individuals across the Internet." *Id.* ¶ 76.  At ¶ 45, plaintiffs allege that:

> "[w]hen Defendant's Trackers are installed on users' browsers, they are syncing their unique user identifiers with other third parties on the websites (e.g., the Partner Trackers listed below).  The result of this process is not only that a single user is identified as one person by these multiple third parties, but they share all the information about that user with one another (because the cookie is linked to a specific user profile). This prevents users from being anonymous when they visit websites.

---

[5] Lower courts have recognized that *Popa* did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case. *See Dellasala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025).  Indeed, "*Popa* confirmed that *Facebook* remains good law.  Specifically, *Popa* observed that it 'need not revisit' the continued viability of *Facebook*, because Facebook's alleged compilation of 'personally identifiable browsing history' demonstrated 'individual circumstances giving rise to plaintiffs' alleged injuries' that satisfied Article III's standing requirements."  *Deivaprakash v. Conde Nast Digital*, 2025 WL 2779193, at *1 (N.D. Cal. Sep. 30, 2025) (internal citation omitted).

United States District Court
Northern District of California

1    Plaintiffs also allege that ad facilitation on sites like Zillow "necessarily involves []
2 identifying the website visitor."  Id. ¶¶ 151-52.  Where anonymity is rendered "functionally
3 meaningless," lower courts have found "pseudonymization" arguments unpersuasive.  See, e.g.,
4 *Riganian v. LiveRamp Holdings Inc*., 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025).

5    The Court finds that, at this stage of the litigation, plaintiffs have adequately pled a "highly
6 offensive" intrusion of privacy that invades a reasonable internet user's expectation of privacy
7 sufficient to establish standing.  *See In re Facebook*, 956 F.3d at 606 ("The ultimate question of
8 whether Facebook's tracking and collection practices could highly offend a reasonable individual is
9 an issue that cannot be resolved at the pleading stage.").  Thus, the Court DENIES defendant's Rule
10 12(b)(1) motion.

12 **III.    Intrusion Upon Seclusion (COUNT I)**

13    PubMatic argues that plaintiffs failed to establish either prong of an intrusion upon seclusion
14 claim.  Mot. at 12-16.  To state a claim for intrusion upon seclusion claim under California common
15 law, "[f]irst, the defendant must intentionally intrude into a place, conversation, or matter as to
16 which the plaintiff has a reasonable expectation of privacy, and second, the intrusion must occur in
17 a manner highly offensive to a reasonable person."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272,
18 287 (2009).  When determining whether a reasonable expectation of privacy exists, courts consider
19 "a variety of factors, including the customs, practices, and circumstances surrounding a defendant's
20 particular activities."  *In re Facebook*, 956 F.3d at 601-02.  When determining whether an invasion
21 is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the
22 intruder's motives and objectives."  *Hernandez*, 47 Cal. 4th at 287.  "Under California law, courts
23 must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the
24 privacy intrusion is."  *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767,
25 797 (N.D. Cal. 2019).

26    PubMatic first argues that "the internet is not a private place," and that accordingly plaintiffs
27 cannot reasonably expect privacy "in activities like attending an open house (like searching for a
28 home on Zillow), going to the movie theater (like watching a movie on Peacock), or buying a

United States District Court
Northern District of California

9

1    cookbook (like visiting Bon Appetit)." Mot. at 12-13.  PubMatic suggests "[s]hopping on a public

2    website, like shopping in a public store, is not an activity one can reasonably expect to keep private

3    from the retailer."  *See Thomas v. Papa Johns Int'l.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8,

4    2024).  Moreover, PubMatic contends that there is no reasonable expectation of privacy in the type

5    of information that PubMatic allegedly collected.  Mot. at 13-14.

6    　　　　The Court finds that PubMatic's alleged conduct is very different from being observed by a

7    retailer while shopping in their store.  Instead, as discussed above, PubMatic allegedly tracks,

8    compiles, and sells massive amounts of information about plaintiffs without their knowledge that a

9    PubMatic pixel has been loaded on a given website.  The Court also agrees with various other lower

10   courts that have found that "engag[ing] in unauthorized tracking and data collection, allowing it to

11   compile detailed profiles of each [p]laintiff's online web browsing activity – including highly

12   sensitive browsing activity – tied to their email addresses and other personal identifiers" is

13   actionable.  *Selby v. Sovrn Holdings*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025); *see also*

14   *Riganian*, 791 F. Supp. 3d at 1087 ("the Court here cannot conclude at the pleading stage that

15   Plaintiffs had no reasonable expectation of privacy in the information that LiveRamp compiled

16   across hundreds to thousands of disparate online and offline sources and then sold to third parties

17   without their knowledge or consent").  Here, too, defendant allegedly amasses information allowing

18   it to compile detailed profiles to sell to advertisers.

19   　　　　PubMatic also argues that plaintiff Doe expressly consented to PubMatic's practices

20   because, to sign up for an account on Mindbloom, she must have acknowledged Mindbloom's

21   Privacy Policy, which disclosed the use of third-party pixels.  *Id.* at 14-15; Reply at 9.  Plaintiffs

22   raise several arguments in response: that Doe allegedly visited the Mindbloom website in or about

23   November 2024, but PubMatic includes the design and content of Mindbloom's webpage as it

24   appears today; that the webpage even as it appears today would not suffice for notice; that even if

25   Doe was on notice and assented to the Privacy Policy, the Privacy Policy did not disclose PubMatic's

26   conduct; and that even if Doe consented to PubMatic's conduct on Mindbloom, that does not mean

27   she was not tracked without consent on other websites before or after visiting Mindbloom.  Opp'n

28   at 11.

United States District Court
Northern District of California

The Court finds it premature to decide the question of consent. While the Court need not accept "legal conclusions" that plaintiffs did not consent to the data practices at issue as true, whether reasonable consumers would understand, based on the Privacy Policy, that by using the Mindbloom website they were consenting to the disclosure of their personally identifiable information to PubMatic, is a question that should be resolved on a fuller factual record. *See Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024). Plaintiffs explicitly alleged in their amended complaint that "Doe did not provide her prior consent to Defendant to install trackers on her browser . . . and disclose her personal data." FAC ¶ 268. The complaint does not mention the Privacy Policy in question. FAC ¶ ¶ 258-69. These allegations are plausible and sufficient at this stage of litigation to establish a reasonable expectation of privacy.

PubMatic next argues that its conduct collecting user information reflects "routine commercial behavior," and is not highly offensive. Mot. at 15-16. However, at this stage, the Court cannot conclude that PubMatic's conduct was not offensive, as "courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc.,* 402 F. Supp. at 797; *see also Selby* 2025 WL 2950164, at *3. Therefore, the Court finds that the plaintiffs' intrusion on seclusion claim can proceed.

## IV.    Violations of CIPA § 631 and ECPA § 2511(1) (COUNTS II and V)

California Penal Code section 631 creates four alternative avenues of liability for any person

> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

11

> [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

Cal. Pen. Code § 631(a) (subdivisions added for clarity); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023). The third clause requires proving a violation of the first or second clauses. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Otherwise, these clauses are independent bases for liability and a section 631 claim survives if a plaintiff plausibly alleges a defendant committed any of the prohibited actions. Here, plaintiffs allege violations of the last three clauses of the statute. FAC ¶¶ 296-305.

Plaintiffs also allege a violation of the ECPA, which provides a cause of action against any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. FAC ¶¶ 330-350; 18 U.S.C § 2511(1).[6]

The parties dispute whether defendant intercepted communications "in transit"; whether defendant intercepted the "contents" of plaintiffs' communications; whether plaintiffs adequately alleged aiding and abetting liability under CIPA; and whether the crime-tort exception to the ECPA applies. *See* Mot. at 16-23; Opp'n at 11-14. The Court considers each argument in turn.

### A.    Interception in Transit

The second clause of Section 631 requires that the defendant intercept a communication when it is "in transit." Cal. Pen. Code § 631(a). The "in transit" element has the same meaning under the ECPA. To determine whether an interception has occurred, courts will look at "cases analyzing the Wiretap Act as informative of section 631(a)." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1082 (C.D. Cal. 2023). The Ninth Circuit analyzed 18 U.S.C. § 2511(1) to determine that interception "with respect to wire communications" is "acquisition contemporaneous with transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

Defendant argues that plaintiffs' interactions with websites are not intercepted while "in

---

[6] Courts analyze violations of 18 U.S.C. § 2511(1) and CIPA § 631(a) under the same standards. *See, e.g., Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018).

United States District Court
Northern District of California

transit" because any collection of plaintiffs' interactions with websites occur "*after* the fact." Mot. at 17. However, plaintiffs' allegations establish how PubMatic intercepts communications in real-time. The complaint includes detailed descriptions of how PubMatic's pixel technology purportedly works. FAC ¶¶ 50-143. The complaint alleges that after the PubMatic pixel is loaded onto a user's browser, then it "surreptitiously intercepts" the URL "for each page of each website visited by the individual." FAC ¶ 62, 148.

PubMatic suggests that, like in *NovelPoster v. Javitch Canfield Grp.*, its purported conduct is "analogous to collecting information about emails after they are received." Mot. at 18; *see* 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014) ("There is only a narrow window during which an E-mail interception may occur—the seconds or milli-seconds before which a newly composed message is saved to any temporary location following a send command."). But, unlike in *NovelPoster* where emails were accessed in accounts after they were received, here the complaint alleges that PubMatic's "interceptions" occurred while users communicated with websites through their browsing activities. While PubMatic may be able to show that it does not actually intercept any communications in transit, that factual dispute is not appropriately resolved here. The Court therefore finds that plaintiffs have plausibly alleged interception in transit.

### B. Contents of Communications

PubMatic argues that "record information" about users' devices does not constitute "contents" of a communication, and that all plaintiffs except plaintiff Selby fail to plead sufficient facts plausibly amounting to content. Mot. at. 19. Plaintiffs respond by pointing to allegations that PubMatic captured detailed URLs, which disclosed plaintiffs' communications with the websites. Opp'n at 12.

"Contents" are defined as the "substance, purport, or meaning" of a communication. 18 U.S.C. § 2510(8); *see U.S. v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009).[7] The Ninth Circuit has

---

[7] Courts have found that the "contents" of a communication under the ECPA and CIPA § 631(a) are the same." *Graham v. Noon, Inc. (Graham I)*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021).

United States District Court
Northern District of California

1    explained that "record information regarding the characteristics of the message that is generated in

2    the course of the communication" is not "content."  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106

3    (9th Cir. 2014).

4          Notwithstanding PubMatic's contention to the contrary, plaintiffs' complaint adequately

5    alleges that PubMatic intercepts more than just "record information."  Plaintiffs allege that PubMatic

6    "collects the URL values of the pages visited by millions of internet users and, thus, intercepts

7    communications between the individuals and those websites, including sensitive information like

8    travel information and health information." FAC. ¶ 67.  The complaint explains that those full-string

9    URLs disclose users' interests and searches.  For instance, the complaint provides an example

10   illustrating that when a user "enters information into the Zillow website indicating the property they

11   are interested in renting, touring, or purchasing, that information is included in the URL of the

12   webpage and is collected by the PubMatic Tracker."  *Id.* ¶ 66 "URLs which disclose search terms

13   that reveal website users' personal interests, queries, and habits are 'contents' of communications

14   under CIPA and ECPA."  *R.C. v. Walgreen Co.*, 733 F. Supp. 3d, 876, 902 (C.D. Cal. 2024)*; see

15   also, Selby.*, 2025 WL 2950164, at *3.

16         In reply, PubMatic argues that plaintiffs' allegations that detailed URLs constitute content

17   fail because they do not include specific "search terms."  Reply at 11.  But, as *Selby* and *R.C.*

18   acknowledge, URLs can also reveal website users' personal interests, queries, and habits,

19   particularly when aggregated into comprehensive user profiles.

20         PubMatic also argues that the complaint is deficient because individual plaintiffs do not

21   identify *which* specific URLs they visited while using the websites that PubMatic purportedly

22   tracked.  Mot. at 19-20, Reply at 11. Indeed, PubMatic suggests that Mitchell, Doe, and Gaw's

23   allegations are fatally deficient.  The Court disagrees.  As plaintiffs explain in response, the websites

24   "in the FAC are a small sample of the hundreds or thousands of websites where Defendant operates

25   and intercepts" URLs with content information.  Opp'n at 12.  Plaintiffs have adequately alleged

26   that PubMatic intercepts not only the broader websites visited, but also URLS including specific

27   articles or specific pages the plaintiffs viewed.  *See, e.g., Gilligan v. Experian Data Corp.* 2026 WL

28   32259, at *3 (N.D. Cal. Jan. 6, 2026).

United States District Court
Northern District of California

As to the adequacy of specific plaintiffs' allegations, the Court finds that plaintiffs Selby, Mitchell, and Doe plausibly allege that the PubMatic pixel collected "content" including the full-string URL of each page of the website they visited (Zillow, Bon Appetit, and Mindbloom respectively). *Id.* ¶¶ 215, 244-245, 258-262. While plaintiff Gaw's allegations do not specifically mention URLs, Gaw too adequately alleges that the content the PubMatic pixel collected was "the webpages he visited" and "which pages of the Peacock website he viewed." *Id.* ¶¶ 215-216. The Court acknowledges that lower courts have sometimes found similar complaints deficient where plaintiffs do not identify with specificity what searches they conducted or what precise webpages they viewed. *See, e.g., King Hard Rock Café International Café Int'l (USA), Inc.,* 2025 WL 1635419, *4 (E.D. Cal. June 9, 2025); *Lewis v. Magnite, Inc.* 2025 WL 3687546 *12 (C.D. Cal. Dec. 4, 2025). However, the Court finds that here plaintiffs have sufficiently alleged that PubMatic intercepted the contents of their communications while they navigated through various websites, such that PubMatic has adequate notice of plaintiffs' claims.

### C.    Aiding and Abetting Liability

PubMatic argues that plaintiffs' "aiding and abetting" allegations, regarding violation of the CIPA § 631(a) through the fourth avenue, are unclear and conclusory. Mot. at 20-21. Plaintiffs argue that PubMatic's identity resolution aids partner pixels in violating the first three clauses of § 631(a). Opp'n at 13-14. The FAC adequately alleges aiding and abetting liability. Plaintiffs state that defendant "[a]ids, agrees with, employs, or conspires with each Partner Tracker that it provides identity resolution to and who intercepts Plaintiffs' and California subclass Members' confidential communications." *See* FAC ¶ 302. Thus, the Court finds that plaintiffs plausibly state a claim for aiding and abetting.

### D.    Crime-Tort Exception

PubMatic argues that plaintiffs' ECPA claim fails because the website owners consented to install the PubMatic pixel on their websites, and thus there is no liability under the ECPA. Mot. at 21-23. Plaintiffs contend that any consent is negated by the crime-tort exception to the ECPA.

1    Opp'n at 14-15.

2    Where "one of the parties to the communication has given prior consent to such

3    interception," there can be no violation of ECPA.  18 U.S.C. § 2511(d); *see also*, *In re Yahoo Mail*

4    *Litig*., 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("The consent of one party is a complete defense

5    to a Wiretap Act claim.").  However, the ECPA provides an exception ("the crime-tort exception")

6    whereby there is a violation even with consent if the "communication is intercepted for the purpose

7    of committing any criminal or tortious act in violation of the Constitution or laws of the United

8    States or any state." 18 U.S.C. § 2511(d); *see Katz-Lacabe v. Oracle America, Inc.* 668 F. Supp. 3d

9    928 (N.D. Cal. 2023); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.3 (N.D. Cal. Mar.

10    18, 2014) ("Alleged interceptions fall within the tort or crime exception only where the 'primary

11    motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs

12    tortiously.'") (quoting *In re Double Click Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y

13    2001)).  Courts have held that "the association of Plaintiffs' data with preexisting user profiles is a

14    further use of Plaintiffs' data that satisfies this exception." *See Brown v. Google LLC*, 525 F. Supp.

15    3d 1049, 1067 (N.D. Cal. 2021); *see also Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med.*

16    *Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016).

17    PubMatic argues that ECPA's crime-tort exception is inapplicable because PubMatic's

18    primary motivation in collecting data was to profit, or "routine commercial behavior," rather than

19    to injure plaintiffs tortiously or criminally. Mot. at 22.  The Court is not persuaded by the authorities

20    PubMatic cites to argue financial motives cannot constitute tortious motive. *See Lakes v. Ubisoft*,

21    *Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025);

22    *Roe v. Amgen Inc*, 2024 WL 2873482, *6 (C.D. Cal. June 5, 2024).  As numerous lower courts have

23    found, being primarily motivated by profit does not render the crime-tort exception inapplicable.

24    *See, e.g., R.C.*, 733 F. Supp. 3d at 902 (collecting cases); *Riganian*, 791 F. Supp. 3d at 1090-91

25    (N.D. Cal. 2025) ("Put simply, committing a tort and seeking a profit are not mutually exclusive (if

26    anything, the latter is often the reason for the former)").  Where, as here, plaintiffs adequately alleged

27    invasion of privacy, the Court is not convinced that ECPA's crime-tort exception does not apply.

28    Therefore, the Court declines to dismiss plaintiffs' ECPA claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

**E.      Conclusion as to CIPA § 631 and ECPA § 2511 Liability**

PubMatic's arguments that plaintiffs have failed to state claims under CIPA § 631 and ECPA § 2511 are unpersuasive.  The complaint plausibly alleges that PubMatic's pixel violates the second through fourth clauses of Section 631.  The Court therefore DENIES PubMatic's motion to dismiss plaintiffs' other claims under CIPA § 631 and ECPA § 2511.

**V.      Violation of CIPA § 638.51 (COUNT III)**

Under Section 638.51(a) of the California Penal Code, "a person may not install or use a pen register ... without first obtaining a court order[.]"  A pen register is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code. § 638.50(b).

PubMatic argues that pixels do not meet the definition of a "pen register" under CIPA for four primary reasons.  Mot. at 23-25.  First, defendant argues that its pixel is not a pen register because it records *incoming* information from users' web activity not *outgoing* information.  *Id.*  at 23.  Second, defendant argues the text and legislative history of Section 638.51 suggest that Section 638.51 is intended to apply to "the telephone line" and not to web-tracking technologies.  *Id.*  Third, defendant argues that plaintiffs' reading of Section 638.51 would essentially "outlaw the internet" by opening every single website to liability.  Mot. at 24, Reply at 13-14.  Fourth, defendant argues that reading CIPA's definition of pen registers to encompass web pixels would create conflict between the California Penal Code and the California Consumer Privacy Act (CCPA).  Mot. at 24-25.  PubMatic relies on various state court decisions to support its interpretation.

Numerous courts in this district and elsewhere have already found pixels to be "pen registers" at the pleading stage, and PubMatic's arguments tread no new ground.  *See Fregosa v. Mashable Inc.*, 2025 WL 2886399, at *2 ("Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and [Breyer], have held that such allegations suffice at the pleading stage."); *see also Bradshaw v. Lowe's Companies, Inc.*, 2025 WL 3171740, at *7 (S.D. Cal Nov.

1    12, 2025) ("[T]he case law is not in Defendants' favor.  Indeed, it uniformly supports the opposite

2    outcome").  For the same reasons these earlier courts have stated, the Court finds that plaintiffs'

3    CIPA § 638.51 claim can proceed.

4

5    **VI.     Unjust Enrichment (COUNT IV)**

6           Finally, PubMatic argues that the Court should dismiss plaintiffs' unjust enrichment claim

7    because plaintiffs "only allege in conclusory fashion that PubMatic retained a benefit without their

8    consent."  Mot. at 25.  Plaintiffs contend that they bring their unjust enrichment claim in the

9    alternative, which is sufficient at the pleading stage.  Opp'n at 21.

10          In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that a plaintiff could not pursue

11   equitable relief unless there is no adequate remedy at law.  971 F.3d 834, 844 (9th Cir. 2020).  The

12   Court finds that plaintiffs' unjust enrichment claim must be dismissed with leave to amend, because

13   plaintiffs have not alleged that they lack an adequate remedy at law.  *See In Re Apple Processor*

14   *Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) ("[p]laintiffs were obliged to allege that

15   they had no adequate legal remedy in order to state a claim for equitable relief); *see also Selby*, 2025

16   WL 2950164, at *4 (failing to allege "how the money they seek through restitution is any different

17   than the money they seek as damages"); *Gilligan*, 2026 WL 32259, at *4 ("Nothing in the Complaint

18   indicates that the plaintiffs' legal remedies are insufficient.").  Therefore, the Court GRANTS

19   PubMatic's motion as to Count IV, with leave to amend.

20

21

22

23

24

25

26

27   ///

28

United States District Court
Northern District of California

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss with leave to amend as to Count IV. To the extent plaintiffs wish to amend their complaint, they must do so by **February 5, 2026.** The Court DENIES the remainder of defendant's motion to dismiss.

**IT IS SO ORDERED**.

Dated: January 27, 2026

_____
SUSAN ILLSTON
United States District Judge